380 F.3d 670
 Julio GIANO, Plaintiff-Appellant,
v.
Glen GOORD, Commissioner Department of Correctional Services, Donald Selsky, Director Special Housing Programs, Frank Irvin, Superintendent, Wende Correctional Facility, Roy Henneberg, Deputy Supt. of Security, Jeffrey Skinner, Captain, Wende Correctional Facility, Walter Shannon, Lieutenant, Wende Correctional Facility, James Burke, Sergeant, Wende Correctional Facility, Timothy Jeziorski, Sergeant, Wende Correctional Facility, and Thomas Lamb, Michael Bishop, Gary Keohane, E. McEvoy, Howard Brennan, John Barbera, and John Doe, Correctional Officers, Wende Correctional Facility, Defendants-Appellees.
 No. 02-0105.
 United States Court of Appeals, Second Circuit.
 Argued: May 27, 2004.
 Decided: August 18, 2004.
 
 Appeal from the United States District Court for the Western District of New York, Charles J. Siragusa, J. COPYRIGHT MATERIAL OMITTED Arthur S. Linker, Katten, Muchin, Zavis Rosenman, New York, NY (Elena Paraskevas-Thadani, on the brief), for Plaintiff-Appellant.
 Martin A. Hotvet, Assistant Solicitor General, for Eliot Spitzer, Attorney General, State of New York, Albany, NY (Caitlin Halligan, Solicitor General; Michael S. Belohlavek, Deputy Solicitor General; David Lawrence III, Assistant Solicitor General; Sachin Pandya, Assistant Solicitor General, on the brief), for Defendants-Appellees.
 Before: CALABRESI, Circuit Judge, and PAULEY, District Judge.[1]
 CALABRESI, Circuit Judge.
 
 
 1
 Julio Giano, an inmate at Wende Correctional Facility ("Wende") in Alden, New York, filed suit in the United States District Court for the Western District of New York, alleging that, in violation of 42 U.S.C. § 1983, the defendants, various state and Wende officials, retaliated against him for filing an earlier lawsuit against prison authorities and for prevailing in a disciplinary proceeding. The district court (Siragusa, J.) dismissed Giano's pro se complaint, on the ground that the plaintiff had failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Following our holding in Lawrence v. Goord, 238 F.3d 182 (2d Cir.2001), that the PLRA did not require plaintiffs to exhaust retaliation claims, we vacated the district court's decision. Giano v. Goord, 250 F.3d 146, 150 (2d Cir.2001). But the Supreme Court subsequently held that all claims relating to "prison conditions," including retaliation claims, are subject to the PLRA's exhaustion requirement. See Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). And so, on remand, the district court adhered to its earlier dismissal of Giano's claims for failure to exhaust.
 
 
 2
 Giano appealed that dismissal, and his suit was argued alongside several other cases that concern the nature and scope of the PLRA's exhaustion requirement: Abney v. New York Dep't of Corr. Servs., 380 F.3d 663, 2004 WL 1842647; Hemphill v. State of New York, 380 F.3d 680, 2004 WL 1842658; Johnson v. Testman, 380 F.3d 691, 2004 WL 1842669; and Ortiz v. McBride, 380 F.3d 649, 2004 WL 1842644. Based on the following principles, as well as those articulated in our opinions in these cases, we vacate the district court's dismissal of Giano's complaint, and remand the case for further proceedings.
 
 I. Background
 
 3
 For purposes of this appeal, we describe the facts as alleged by Giano. On September 30, 1996, Giano submitted to a urine test pursuant to prison authorities' orders. Sometime between September 30 and October 3, six of the defendants tampered with and contaminated Giano's urine sample, causing the sample to test positive for marijuana, with the result that a misbehavior report against Giano was issued on October 4. According to Giano, the defendants took these actions in retaliation for his prior filing of a lawsuit against prison officials.[2] Giano also claimed that defendant Corrections Officer ("CO") E. McEvoy, who had been assigned to assist Giano in his defense, conspired with others to deprive Giano of the opportunity to seek and obtain exculpatory information.
 
 
 4
 At the ensuing disciplinary hearing, several of the defendants allegedly presented false documents and testimony against Giano. Giano challenged this evidence, and claims that based on "evidence that proved acts of impropriety on the part of staff" and "a series of procedural errors committed during the testing of the sample," he succeeded in getting the drug charge against him dismissed. Giano further alleges that, after the hearing concluded, McEvoy threatened to "get even" with him for having filed complaints about the way in which McEvoy had performed his duties as Giano's defense assistant. McEvoy is reported by Giano to have said, "you better be real careful for this is not the end. I work with the officers who test urines and you're not going to make fools of us." McEvoy also purportedly told Giano that he had been framed "for something having to do with a law suit."
 
 
 5
 According to Giano, retaliation by the defendants continued in November 1996, when Giano participated in a 72-hour trailer visit as part of the prison's family reunion program. The program required inmates to undergo drug testing before and after each visit, and a positive drug test would result in suspension from the program for one year. Following Giano's trailer visit, defendant Gary Keohane, a CO, allegedly ordered Giano to provide a urine sample in a plastic cup and then placed the sample into a paper bag containing another inmate's sample. Giano claims that Keohane did not put a tamper-proof seal on the cup, nor did he tell Giano where the sample would be stored or who would be testing it. He asserts that Keohane and three others contaminated the sample and issued a misbehavior report, in retaliation for Giano's earlier lawsuit and for his victory in the first disciplinary proceeding. A second disciplinary hearing convened, and Giano claims that the defendants again presented false evidence and false testimony against him. This time he was found guilty of the charge, and in addition to a one-year suspension from family reunion visits, he was sentenced to 30 days in keeplock, without privileges, as a penalty.
 
 
 6
 Giano appealed the disciplinary hearing's determination to Glen Goord, the acting Department of Correctional Services ("DOCS") commissioner. In a letter to Goord, Giano provided a detailed account of the asserted wrongdoing by defendants before and during the second disciplinary hearing. He stated in the letter:
 
 
 7
 The misbehavior report, dated 11/20/96, alleged that the urine sample I provided after a family reunion visit with my mother tested positive for use of cannibinoid. It was my defense that, and based upon a pending civil action against fourteen DOCS employees for inter alia retaliatory conduct and treatment... as well as a previous hearing for the same charge a month earlier which was dismissed based upon the presentation of evidence that proved acts of impropriety on the part of staff, my urine sample was deliberately tampered with by an employee at Wende.
 
 He added:
 
 8
 At the commencement of the hearing, I made a formal objection to have the hearing officer ... recuse himself as hearing officer. It was my argument that, and since my defense was that correctional staff deliberately tampered with my urine sample, in the capacity of supervisor and responsibility for the conduct of staff he could not act in an impartial manner.
 
 
 9
 In the letter, Giano went on to explain, in detail, the circumstances that led him to believe that the urine sample was tampered with. He also contended that defendants denied him the benefit of testimony from a material witness, that the hearing officer was demonstrably biased, and that no proper foundation had been laid for the test results. He requested that the drug use charge be "reversed, dismissed, and expunged from [his] records." On February 11, 1997, the commissioner, ruling against Giano, affirmed the result of the second disciplinary hearing.[3]
 
 
 10
 Giano's complaint included ten claims, four of which are relevant to this appeal. In substance, he alleged that, in retaliation for his filing of an earlier lawsuit and for his having opposed the disciplinary charges against him, the defendants tampered with his urine samples and falsified some of the documentary and testimonial evidence used against Giano at the disciplinary hearings. On December 1, 1997, prior to service of Giano's complaint on any of the defendants, the district court (Arcara, J.) issued a sua sponte order requiring Giano to detail his efforts to exhaust his administrative remedies. In response, Giano submitted a statement asserting that he had pursued his retaliation claims in the disciplinary process, and that this should have been sufficient to exhaust his remedies. He argued that New York prison regulations and DOCS Directive 4040, which state that disciplinary decisions and dispositions are non-grievable, prohibited him from filing a grievance to redress the harm defendants caused. He also claimed that any other avenue of appeal would have been futile because his earlier complaints had not been investigated.
 
 
 11
 In June 1998, the district court (Siragusa, J.) dismissed Giano's complaint, concluding that he had failed to exhaust his available administrative remedies as required by the PLRA. The court ruled that although state regulations may have barred Giano from filing a grievance protesting the outcome of the disciplinary proceeding, the inmate grievance procedures nevertheless were the appropriate venue for challenging the acts of retaliation that Giano alleged in his complaint. The contamination of his urine samples, breaches of security during the drug testing process, the filing of false misbehavior reports, the verbal threats by McEvoy, and the defendants' alleged falsification of testimonial and documentary evidence were all grievable through DOCS grievance procedures, the district court held. Giano's failure to file a separate grievance, the court ruled, meant that his administrative remedies remained unexhausted.
 
 
 12
 We vacated the district court's decision on May 16, 2001, based on our holding in Lawrence v. Goord, 238 F.3d 182 (2d Cir.2001), that the PLRA did not require plaintiffs to exhaust claims of retaliation, because such claims involved "individualized retaliatory actions against an inmate" rather than "claims brought `with respect to prison conditions.'" Giano v. Goord, 250 F.3d 146, 150 (2d Cir.2001). The Supreme Court subsequently ruled that retaliation claims were subject to the PLRA's exhaustion requirement, see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), and thereafter, on remand, the district court (Siragusa, J.), in an order dated April 1, 2002, again dismissed Giano's complaint for failure to exhaust. Giano filed a timely Notice of Appeal.
 
 II. Discussion
 
 13
 The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Further, as long as other forms of relief are obtainable through administrative channels, the provision is applicable even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings. Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).
 
 
 14
 We have previously held that administrative exhaustion is not a jurisdictional predicate, Richardson v. Goord, 347 F.3d 431 (2d Cir.2003), and that plaintiffs are entitled to notice and an opportunity to be heard before a court can dismiss their complaints for failure to exhaust administrative remedies, Snider v. Melindez, 199 F.3d 108 (2d Cir.1999). Moreover, failure to exhaust is an affirmative defense, see Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999), and defendants' actions "may ... estop[ ] the State from asserting the exhaustion defense," Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir.2004). Further, "special circumstances" may excuse a prisoner's failure to exhaust, but dismissal with prejudice, when remedies are no longer available, is required "in the absence of any justification for not pursuing [such] remedies." Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir.2004); see also Rodriguez v. Westchester County Jail Corr. Dep't, 372 F.3d 485, 2004 WL 1403670 (order denying petition for rehearing) (stating that the plaintiff's "prior understanding of the [PLRA], even though ultimately determined to be incorrect, was a `justification for not pursuing available remedies'" (internal citation omitted)).
 
 
 15
 In addition, today, in Ortiz v. McBride, we hold that exhausted claims filed alongside unexhausted ones may proceed even though the unexhausted claims must be dismissed. In Abney v. New York Dep't of Corr. Servs., we conclude that, in some circumstances the behavior of the defendants may render administrative remedies unavailable, for purposes of the PLRA. And, in Hemphill v. State of New York we read our holding in Ziemba, supra, to signify that the threats prison officials allegedly made against the plaintiff may in some instances be sufficient to estop the government from asserting the affirmative defense of non-exhaustion. As a result, in Hemphill we deem dismissal of the plaintiff's complaint at the summary judgment stage inappropriate, and remand for further factual consideration. Finally, in Johnson v. Testman, we hold (a) that the government waived its defense of non-exhaustion as to one defendant, and (b) that while, in some situations, the raising of a prisoner complaint in a disciplinary hearing may amount to exhaustion of administrative remedies, in others it may not.
 
 
 16
 In the instant case, we follow our recent decisions in Berry and Rodriguez, which make clear that there are certain "special circumstances" in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified. Berry, 366 F.3d at 87-88; Rodriguez Order at 1. The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding.
 
 
 17
 In the case before us, the plaintiff reasonably interpreted DOCS regulations to mean that his only administrative recourse was to appeal his disciplinary conviction. Believing that DOCS Directive 4040 precluded the filing of a grievance on matters relating to disciplinary proceedings, Giano did not file a grievance. Instead, he included references to the conduct of which he currently complains in his submissions appealing the adverse disciplinary ruling. As a result of his failure to file a formal grievance, there is a significant chance that the state will now seek to bar him from pursuing the grievance mechanisms that, it says, in fact were once available to him.
 
 
 18
 Our sister circuits have taken a variety of approaches to the question of how inmates' deviations from prison grievance procedures and rules should be treated for the purposes of PLRA exhaustion. The Seventh and Tenth Circuits have adopted the most stringent stance, importing the equivalent of a procedural default rule from the habeas context. See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir.2002) (drawing an analogy to collateral attacks on state court convictions, and holding that "[t]o exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim... [I]f the state stands on its time limits and rejects the filing as too late, then state remedies have not been properly invoked."); Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir.2004) ("[W]e join the Seventh Circuit in holding that the PLRA, like 28 U.S.C. § 2254, contains a procedural default concept within its exhaustion requirement.").[4] The Sixth Circuit, in contrast, has rejected such a strict standard. In Thomas v. Woolum, 337 F.3d 720 (6th Cir.2003), the court ruled that so long as an inmate presented his grievance to prison officials and appealed through each level of the appellate hierarchy, he need not have complied with the state's time limits for filing grievances or appeals.[5]
 
 
 19
 As noted earlier, our circuit has recognized that while the PLRA's exhaustion requirement is "mandatory," Porter, 534 U.S at 524, 122 S.Ct. 983, certain caveats apply. First, we have held that non-exhaustion is an affirmative defense subject to estoppel in cases where prison officials inhibit an inmate's ability to utilize administrative grievance procedures. Ziemba, 366 F.3d at 163-64. And, we today hold, in Abney, that, in certain situations, administrative remedies may not be "available," 42 U.S.C. § 1997e(a), to prisoners seeking redress of their grievances. Such circumstances include, but are not limited to, instances where the prisoner obtains a favorable disposition of his grievance, only to find, after the time for filing an administrative appeal has expired, that the relief he had won was not forthcoming. Abney, citation. See also Underwood v. Wilson, 151 F.3d 292 (5th Cir.1998) (holding that where plaintiff had undertaken all possible appeals but the prison authorities failed to respond within required time period, prisoner had exhausted administrative remedies); Foulk v. Charrier, 262 F.3d 687 (8th Cir.2001) (holding that remedies were not "available" to plaintiff where the warden did not respond to inmate's grievance during the time period required by regulations). Finally, Berry and Rodriguez confirm that the PLRA's exhaustion requirement is not so rigid as to permit the barring of all suits brought after administrative remedies are no longer available, regardless of the circumstances, and simply because the plaintiff failed to follow prison grievance procedures to the letter. "Special circumstances" may exist that amount to a "justification" for not complying with administrative procedural requirements. Berry, 366 F.3d at 88; Rodriguez Order at 1.[6]
 
 
 20
 While the language of the PLRA does not compel our conclusion,[7] we believe that prisoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred. Such a rule would not comport with the purposes of the PLRA, which sought to "invigorate[ ] the exhaustion prescription," Porter, 534 U.S. at 524, 122 S.Ct. 983. And, allowing prisoners to bypass administrative procedural rules with impunity would subvert Congress's desire to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 525, 122 S.Ct. 983.[8]
 
 
 21
 This does not, however, mean that non-exhaustion caused by a prisoner's failure timely to pursue "available" administrative remedies is never justified. Quite the contrary. Nor is it appropriate to analogize the PLRA's exhaustion requirement to the procedural default rule applicable in the habeas context. For, as we today hold in Ortiz, the differences between habeas cases and prison litigation under § 1983 are legion. Accordingly, there is no underlying reason why what constitutes "cause and prejudice" sufficient to permit avoidance of procedural bars in habeas cases should govern PLRA exhaustion situations. Nor does the language or legislative history of the PLRA suggest that Congress intended the PLRA's exhaustion provisions to be the equivalent of, or stricter than, habeas procedural default rules.
 
 
 22
 What is justification in the PLRA context for not following procedural requirements — so that when grievance procedures are no longer available, a § 1983 action can be brought — cannot be decided by borrowing from other areas of the law. It must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way. In Berry, we found that the plaintiff had presented no such justification. Berry, 366 F.3d at 88. In contrast, in Rodriguez, we held that the plaintiff had justified his failure to exhaust. Rodriguez order at 1. We need not, and hence should not, today attempt any broad statement of what constitutes justification. It is enough for us to recognize that Giano's complaint alleges facts that, if true, suffice to justify his failure to file an ordinary grievance.
 
 
 23
 Specifically, while Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse. New York prison regulations provide that "[t]he individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, DOCS Directive 4040 states, inter alia, that "[t]he individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable. Specifically, the individual decisions or dispositions of the following are not grievable:... disciplinary proceedings." Giano, understandably, asserts that this provision led him to think that he could not pursue matters relating to disciplinary proceedings through the Inmate Grievance Procedure ("IGP").
 
 
 24
 The defendants argue that Giano misread DOCS regulations. First, they contend that the DOCS rules preclude the filing of grievances only when such grievances would seek to protest "individual decisions or dispositions" of disciplinary proceedings, and do not bar grievances which challenge the manner in which the proceedings themselves are conducted, or which assert retaliatory treatment in connection with the collection and presentation of evidence at two disciplinary hearings. Second, they submit that Giano could have pursued the expedited procedure applicable to grievances alleging harassment — i.e., "[e]mployee conduct meant to annoy, intimidate, or harm an inmate," 7 N.Y.C.R.R. § 701.11. In this regard, defendants cite internal DOCS reports indicating that "[a] significant number of staff conduct grievances continue [ ] to be attributed to inmate interaction with staff involving misbehavior reports." These, the defendants argue, show that complaints about staff conduct associated with misbehavior reports are regularly grieved through the IGP.
 
 
 25
 Nonetheless, even assuming that Giano read DOCS regulations incorrectly, his interpretation was hardly unreasonable. Section 701.3(e)(1) and Directive 4040 do not differentiate clearly between grievable matters relating to disciplinary proceedings, and non-grievable issues concerning the "decisions or dispositions" of such proceedings. Indeed, as the plaintiff points out, a learned federal district court judge not long ago endorsed an interpretation of DOCS regulations nearly identical to Giano's. See Samuels v. Selsky, 2002 WL 31040370 (S.D.N.Y. Sept.12, 2002) (holding that inmate had exhausted his available administrative remedies where he complained during a disciplinary appeal about the confiscation of religious material which resulted in the misbehavior report that had given rise to the disciplinary charges).[9] Here, similarly to the plaintiff in Samuels, Giano attempted to expose prison officials' allegedly retaliatory behavior during his disciplinary proceeding, which centered around misbehavior reports stemming from the very retaliatory activity of which Giano now complains. Though, according to defendants, Giano could actually have pursued a separate grievance, we believe that it was reasonable for him to think that direct appeal of his disciplinary conviction was his only available remedy. Accordingly, we hold that his failure to exhaust was justified.
 
 
 26
 At oral argument, the defendants suggested that, were Giano's federal claims to be dismissed, he would still have administrative remedies available to him. It was not clear, however, whether, under DOCS regulations, Giano would now be allowed to file an untimely grievance, or whether his only recourse would be to mount a collateral attack in an Article 78 proceeding in order to obtain the right to grieve. If prison authorities must still, under New York rules, allow Giano to file a grievance, then administrative remedies remain "available" to him, and he must exhaust them before proceeding with this suit. If, instead, prison authorities will only allow him to file a grievance at this time as a result of a collateral challenge in the courts, then we believe that administrative remedies are not "available" for the purposes of the PLRA.[10] And, since their lack of availability is due to justified behavior by Giano, he may proceed with this action.
 
 
 27
 We therefore remand Giano's case to the district court, with instructions to allow Giano's suit to proceed if it appears that administrative remedies are no longer available or could only be made available as a result of collateral proceedings such as Article 78 actions. Conversely, if it seems that prison grievance procedures are still available to Giano, the district court should dismiss Giano's complaint without prejudice, subject to reinstatement if the prison does not allow Giano to file and pursue his grievance.
 
 III. Conclusion
 
 28
 For the foregoing reasons, the judgment of the district court is VACATED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The Honorable William H. Pauley III, United States District Judge for the Southern District of New York, sitting by designation. Because the Honorable Robert D. Sack recused himself from consideration of this case prior to oral argument, the case was decided by a two-judge panelSee Murray v. National Broadcasting Co., Inc., 35 F.3d 45 (2d Cir.1994).
 
 
 [2]
 Giano's prior lawsuit alleged that Wende officials had retaliated against him based on their belief that he had caused a prison strike at the Auburn Correctional Facility in June 1995
 
 
 [3]
 Apparently, no further disciplinary appeals were available to GianoCf. Gibson v. Goord, 280 F.3d 221, 223 (2d Cir.2002) (affirming a district court's dismissal of prisoner's complaint for failure to exhaust where the inmate had filed a "level one grievance," but had not pursued the available remedy of filing a "level two grievance").
 
 
 [4]
 It is not clear whether and to what extent these courts might nonetheless allow exceptions to the procedural default rule in cases where "cause and prejudice" or other mitigating factors could be shownSee Pozo, 286 F.3d at 1025 (stating that "there is no doubt about the right treatment when the one and only ground for rejecting a claim or appeal is untimeliness," but leaving open the question of whether a prisoner might, under certain circumstances, be "relieve[d] ... of a default in the state's process").
 
 
 [5]
 Reasoning that the PLRA's exhaustion requirement "is not ... designed to permit state administrative timelines to handcuff the federal courts in adjudicating cases involving important federal rights," theThomas court concluded that "if the state forgoes an opportunity to decide matters internally whether for internal time limit constraints or any other reason, the PLRA has nonetheless served its purpose, and the prisoner may proceed to federal court." Thomas, 337 F.3d at 726.
 
 
 [6]
 We note that the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, (b) situations in which administrative remedies are not "available" to the plaintiff, and (c) circumstances in which administrative remedies are "available," but the prisoner's original failure to exhaust is nonetheless justified, and hence does not bar the prisoner's subsequent suitSee, e.g., Brown v. Croak, 312 F.3d 109, 112 (3d Cir.2002) (stating, in a case where prisoner allegedly was told, contrary to prison regulations, that he could not file a grievance prior to the completion of a security investigation, that "[d]efendants have not met their burden of proving the affirmative defense of failure to exhaust remedies,"and that "instructions by prison officials that are at odds with the wording of [state regulations]" might "render[ ] the formal grievance procedure unavailable [to the plaintiff] within the meaning of 42 U.S.C. § 1997e"); Miller v. Norris, 247 F.3d 736, 740 (8th Cir.2001) (holding that "a remedy that prison officials prevent a prisoner from utilizing is not an `available' remedy under § 1997e(a)" (internal quotation marks omitted)). This may, of course, be because the same facts sometimes fit into more than one of these categories.
 
 
 [7]
 See Kermit Roosevelt III,Exhaustion Under the Prison Litigation Reform Act: The Consequence of Procedural Error, 52 Emory L.J. 1771 (2003), for a thorough and thoughtful discussion of this and other aspects of prisoners' failure to take advantage of prison grievance procedures.
 
 
 [8]
 See also Days v. Johnson, 322 F.3d 863, 867-68 (5th Cir.2003) ("We, of course, do not hold that an untimely grievance in and of itself would render the system unavailable, thus excusing the exhaustion requirement. Such a holding would allow inmates to file suit in federal court despite intentionally evading the PLRA's exhaustion requirement by failing to comply with the prison grievance system.")
 
 
 [9]
 InSamuels, the plaintiff's suit was predicated on defendants' confiscation of religious material — material that later had become the subject of a misbehavior report resulting in discipline of the plaintiff. The inmate did not file a separate grievance concerning the confiscation of religious materials, but he did appeal the adverse disciplinary ruling. The defendants argued that the inmate should have grieved the confiscation of his religious materials separately, contending that the plaintiff's disciplinary appeal did not suffice, under the PLRA, to exhaust his administrative remedies. The court disagreed, holding that "[t]o the extent that the confiscation issue is a constituent element of the misbehavior adjudication, [the plaintiff] need not file an administrative grievance because he already sought review of the matter on direct appeal." Samuels v. Selsky, 2002 WL 31040370, at *8 (S.D.N.Y. Sept.12, 2002).
 
 
 [10]
 UnderGibson, 280 F.3d at 223, prisoners who have no adequate justification for not doing so are required to pursue available appeals within the prison's internal grievance structure in order to exhaust their remedies. See supra note 3. There is no suggestion, however, either in Gibson or in the language of the statute, that the PLRA requires inmates to mount collateral attacks on unfavorable administrative judgments or on denials of the right to grieve.