Domingo BORGES, Plaintiff,

v.

E. PIATKOWSKI, Defendant.

No. 99–CV–6351L.

United States District Court,
W.D. New York.

Sept. 28, 2004.

Domingo Borges, pro se.

Brian N. Zorn, Faraci & Lange LLP, Dannemora, NY, for Plaintiff.

Christian C. Casini, Osborn, Reed, Burke & Tobin, LLP, Kelly Ann McCarthy, Office of the New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiff, Domingo Borges ("plaintiff"), an inmate in the custody of the New York State Department of Corrections ("DOCS"), commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to his serious medical needs. Only defendant Dr. E. Piatkowski, D.D.S., remains in the action. Dr. Piatkowski has moved for summary judgment (Dkt.# 53) on the grounds that plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). As set forth below, Dr. Piatkowski's motion is denied.

## RELEVANT FACTS

For purposes of this motion, the following facts are undisputed. Plaintiff was incarcerated at the Southport Correctional Facility. On August 26, 1996, Dr. Lax extracted a wisdom tooth from plaintiff's mouth at the Southport Dental Clinic. During this procedure, a dental drill burr broke off and was left in the tooth socket (known as "area # 32") without plaintiff's knowledge.

Sometime thereafter, plaintiff began experiencing severe pain in his mouth near area # 32. Plaintiff repeatedly reported this pain to Dr. Piatkowski, a dentist at the Clinic. On April 28, 1998, Dr. Piatkowski examined plaintiff and told him that his pain was due to his wisdom teeth. Dr. Piatkowski referred him to Strong Memorial Hospital to be evaluated for the possible extraction of his remaining wisdom teeth. Thereafter, on May 6, 1998, Dr. Piatkowski removed a flap of tissue at tooth # 16, but did not address area # 32. For three to four months, plaintiff experienced severe pain and complained about it. Plaintiff was given only Motrin for the pain. Dr. Piatkowski continued to tell plaintiff that the source of his pain was his wisdom teeth.

Plaintiff was not seen at Strong until August 19, 1998. During this visit, x-rays were taken that revealed a foreign object and a reactive lesion in area # 32 of plaintiff's mouth. Plaintiff claims that he was told by the doctor at Strong, Dr. Shanin Shahgoli, that he had a "cyst" in his mouth where his wisdom tooth had been extracted and that he would be "recalled" to Strong to address the problem. Neither Dr. Shahgoli nor anyone else at Strong, however, told plaintiff about the foreign object that was discovered or that he had a reactive lesion.

Dr. Shahgoli prepared one page of "Ambulatory Dental Notes" pertaining to plaintiff's consultation at Strong that referred to the object as "probably a bur[r] with [a] reactive lesion surrounding it." Dr. Shahgoli also prepared a consultation report that described the reactive lesion, but did not mention the foreign object. It is undisputed that Dr. Piatkowski reviewed and signed the consultation report, but on what date it is not clear. What is also not clear is whether Dr. Piatkowski received and reviewed the Dr. Shahgoli's Ambulatory Dental Notes, and thus knew about the foreign object in plaintiff's mouth. It is undisputed, though, that Dr. Piatkowski did not tell plaintiff about the report, the reactive lesion, or the foreign object, and did not do anything to remove the foreign object or otherwise treat the reactive lesion that was causing plaintiff pain. It is

also undisputed that after plaintiff returned from Strong, Dr. Piatkowski never called plaintiff out for an examination or for another x-ray, and did not treat plaintiff again.

In late October of 1998, plaintiff was transferred from Southport Correctional Facility to Attica Correctional Facility. On November 30, 1998, plaintiff was seen by Dr. Heinzerling at Attica. Another x-ray was performed and Dr. Heinzerling told plaintiff about the foreign object in area # 32 and the reactive lesion. This was the first time plaintiff learned that a foreign object and reactive lesion, not a cyst or his wisdom teeth, were the sources of his medical problem. On September 30, 1999, the object was surgically removed from plaintiff's mouth.

In his complaint, plaintiff alleges that Dr. Piatkowski acted with deliberate indifference to his serious medical needs when, after reading the consultation report, he knowingly failed to treat the reactive lesion or address his medical needs in a timely fashion. (Dkt.# 6).

## DISCUSSION

■ The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The purpose of the PLRA's exhaustion requirement was "to reduce the quantity and improve the quality of prisoner suits ... [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524–25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

New York State regulations provide for a three-step administrative process, which begins when a prisoner files a timely complaint with the Grievance Clerk "within 14 calendar days of an alleged occurrence." *See* 7 N.Y.C.R.R. § 701.7(a)(1).

Here, it is undisputed that plaintiff never filed a grievance relating to any of his claims in the complaint.[1] Plaintiff argues, however, that he was not required to exhaust his administrative remedies. He asserts that administrative remedies were not actually "available" to him because he did not learn of the foreign object and reactive lesion until November 1998. By that time, the fourteen-day filing period required by the Inmate Grievance Program had passed. Plaintiff claims that he was unaware of any alleged wrongdoing by Dr. Piatkowski before this date and could not have filed a grievance complaining of Dr. Piatkowski's deliberate indifference to his serious medical needs when he did not know of the nature of his alleged wrongdoing.

Dr. Piatkowski argues that plaintiff had more than sufficient information to file a timely grievance against him. Dr. Piatkowski points to the fact that plaintiff claims that Dr. Shahgoli told him that he had a "cyst" in the area where his # 32 wisdom tooth had been extracted, and also knew that Dr. Piatkowski did not treat him for this "cyst." Dr. Piatkowski argues that plaintiff had two months before he left Southport during which to file a grievance against him for failing to treat his serious medical needs. I disagree.

■ It is clear that the PLRA requires exhaustion of only those administrative remedies that are "available" to the in-

1. Plaintiff also sued Dr. Shahgoli, and dental assistant Pamela Randall. Claims against those defendants have been resolved.

mate. *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.' " *Id.* (quoting *Booth v. Churner,* 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). I agree with plaintiff that, under the circumstances of this case, he had no "available" administrative remedies to exhaust during the last two months at Southport. *See Abney,* 380 F.3d at 668 (administrative remedies not available to plaintiff who discovered that favorable grievance decision was not being implemented until well after deadline for filing grievance appeal had passed).

During the two months between the time he returned from Strong until he was transferred to Attica, plaintiff did not know that Dr. Piatkowski received and reviewed the consultation report. Nor could plaintiff have been aware of the fact that Dr. Piatkowski may have known of the nature of his medical condition and may have intentionally refused to provide medical care to treat that condition. At that time, all plaintiff knew was that he had just returned from an outside consultation and that he was due to return to Strong at some point in the future to treat the problem. Given that it took plaintiff almost four months after he was referred to Strong to be examined there, it is not

surprising that plaintiff did not complain about the fact that his condition was not being treated in the two months he remained at Southport.

■ Under these circumstances, plaintiff could not be expected to have filed a grievance against Dr. Piatkowski for not treating him further upon his return. Dr. Piatkowski's argument that plaintiff had "enough" information to complain that he was not being treated is not persuasive. It is equally plausible that plaintiff, who had just returned from an outside consultation and who believed he was to return to Strong in the future to address the problem, believed that Dr. Piatkowski was taking steps to set that up. Plaintiff, however, was transferred to Attica. By the time he learned that he had a foreign object in his mouth that caused him pain, and that Dr. Piatkowski may have known about the true nature of his condition but did nothing to address it, more than fourteen days had elapsed since Dr. Piatkowski's allegedly unconstitutional conduct. Thus, there was no further "possibility of some relief" for plaintiff.[2] *See Booth,* 532 U.S. at 738, 121 S.Ct. 1819. Therefore, plaintiff had no available remedy to exhaust, as there was no mechanism in which to file a grievance about Dr. Piatkowski's alleged deliberate indifference to his medical needs. *See Abney,* 380 F.3d at 667.[3]

**2.** Although neither party raised the issue, plaintiff arguably could have filed a grievance against Dr. Piatkowski with the Inmate Grievance Resolution Committee ("IGRC") at Attica. New York's Inmate Grievance Program allows prisoners to pursue grievances even after they have been transferred away from the facility where the grievance arose. *See* 7 N.Y.C.R.R. § 701.3(k)(2). However, where that grievance would be considered moot because it only affected the specific grievant while he was a resident at the previous facility, the IGRC "shall dismiss and close the grievance." *Id.* Plaintiff's grievance against

Dr. Piatkowski was moot in November 1998, as his medical needs were thereafter being treated by Attica's medical professionals. Accordingly, it appears that § 701.3(k)(2) did not provide plaintiff with an "available" remedy either.

**3.** In any event, even if there were "available" remedies to plaintiff, based on the unique facts of this case, I conclude that "special circumstances" exist that justify plaintiff's failure to exhaust his remedies here. *See Giano v. Goord,* 380 F.3d 670 (2d Cir.2004).

428

## CONCLUSION

For the foregoing reasons, defendant Dr. E. Piatkowski's motion for summary judgment (Dkt.# 53) is denied.

IT IS SO ORDERED.