Hardy BROWNELL, Plaintiff–
Appellant,

v.

Robert KROM, Scott Mentnech, Ross Loucks, Richard Bivens, Roger Specht, and C. Ferrafola, Defendants–Appellees.

Docket No. 04–6364–PR.

United States Court of Appeals, Second Circuit.

Argued: Aug. 25, 2005.

Decided: May 3, 2006.

James Bogin (Karen Murtagh–Monks, Michael E. Cassidy, on the brief), Steven R. Banks & John Boston, The Legal Aid Society, New York, New York, of counsel, for Plaintiff–Appellant.

David Lawrence III, Assistant Solicitor General, Michael S. Belohlavek, Senior Counsel (Eliot Spitzer, Attorney General

of the State of New York) New York, New York, for Defendants–Appellees.

Before: WALKER, Chief Judge, JACOBS and HALL, Circuit Judges.

HALL, Circuit Judge.

Hardy Brownell, Jr., an inmate at Shawangunk Correctional Facility ("Shawangunk") in Wallkill, New York, filed suit under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York, alleging that defendant corrections officers denied his right of access to the courts by intentionally losing his legal documents and other personal items while transferring him between correctional facilities. Brownell contends that the defendants' failure to account properly for his lost legal documents has precluded him from filing a timely habeas corpus petition. Consequently, Brownell claims that he has been denied access to the courts in violation of the First, Fifth, and Fourteenth Amendments. In an order entered November 8, 2004, the district court (McKenna, *J.*) granted defendants' motion for summary judgment, finding that Brownell had not exhausted his claims as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Because we find that special circumstances justified Brownell's failure to exhaust and that administrative remedies are no longer available to him, we reverse the order granting summary judgment and remand this case to the district court for proceedings on the merits of the § 1983 complaint.

## Background

### I. *Brownell's Prison Transfers and the Loss of His Property*

In June 2000, Brownell was incarcerated at Woodbourne Correctional Facility ("Woodbourne"). On June 9, 2000, Woodbourne corrections officers confronted Brownell for unauthorized possession of a corrections officer's photograph and Social Security number. Prison officials then moved Brownell and "certain personal and legal items" to the Special Housing Unit ("SHU") while his cell was searched for additional contraband. On Sergeant Krom's order, Corrections Officers Mentnech and Loucks searched Brownell's cell, uncovering three additional corrections officers' identification cards with Brownell's picture on each of them. That same day, Brownell was transferred to Eastern Correctional Facility ("Eastern").

In anticipation of transferring Brownell to Eastern, Mentnech and Loucks packed the contents of Brownell's cell (excluding the personal effects Brownell took with him to the SHU) in thirteen bags. With the assistance of another officer (not a party to this lawsuit), Corrections Officer Bivins searched and re-packed Brownell's thirteen bags. Bivins also filled one more bag with Brownell's remaining personal effects from the SHU. Bivins completed a Personal Property Transferred inventory form indicating that Brownell was leaving Woodbourne with fourteen property bags. Officers Bivins and Specht transported Brownell from Woodbourne to Eastern, and Officer Bivens certified the arrival of fourteen property bags at Eastern. Corrections Officer Ferrafolo received Brownell at Eastern and confirmed by written receipt that Brownell had arrived with fourteen bags of property. Brownell is himself unsure whether all his bags arrived there, claiming that he did not have access to or see his property while at Eastern.

Brownell claims that five weeks later, on July 14, 2000, he was transferred to Southport Correctional Facility ("Southport") with only three bags. On September 16, 2000, Brownell was transferred with three

property bags from Southport to Shawangunk, where he remains incarcerated.

## II.  *The Administrative Process*

### A.  *Lost Property Reimbursement Claim*

Upon learning on July 14, 2000, that eleven of his bags were missing, Brownell claims that he contacted the Inmate Records Clerks at both Southport and Shawangunk and was informed that the only documentation on record indicated that three bags were shipped from Eastern. On September 18, 2000, Brownell filed an "Inmate Claim Form" at Shawangunk for recovery of his lost property. He listed, as missing, items of clothing and footwear, as well as "2000 pages of trial transcripts" from his 1976 trial; "500 pages of hearing transcripts and motion papers;" and "200 pages of research material for a federal habeas corpus that was to be filed by September of 2000."

The Inmate Claim Form that Brownell used appears to be intended to reimburse inmates for the value of their lost property. For example, Part 2 of the form asks the inmate to provide the "original cost" and "depreciation" of the missing item as well as the "reimbursement requested." In addition, in the portion of the claim form used for an administrative response, the grounds for rejecting a claim relate to unrealistic claim value, unsubstantiated claim value, or failure to indicate age and condition of the property at the time of loss. Although the Inmate Claim Form is designed for inmate reimbursement, Brownell appears to have used the form to locate his property. For example, while he indicated on the form that he did not know the value of his clothing, footwear, or legal papers (information indicative of an intent to be reimbursed), he did specify the time frame during which he thought the loss occurred. Brownell's form was assigned a claim number and an "Inmate Claims Investigation" was undertaken.

On November 11, 2000, the investigator, Sergeant Bertone, recommended denial of Brownell's claim. During his investigation, Sergeant Bertone contacted Shawangunk Corrections Officer Howe, as well as a records clerk, and Brownell himself. Sergeant Bertone referenced Officer Howe's written statement that no legal papers were inventoried during the processing of Brownell's property when he arrived at Shawangunk. Sergeant Bertone concluded ultimately that "[a]ll property received at [Shawangunk] [was] inventoried" and that "[p]roperty missing prior to [Shawangunk] would not fall into the responsibility of [the] facility. Inmate has no documented proof of purchase or prices." On November 14, 2000, Deputy Superintendent of Administration ("DSA") Leo Bisceglia considered Sergeant Bertone's recommendation and denied the claim for lack of documentation.

### B.  *Grievance*

The New York Department of Correctional Services ("DOCS") affords prisoners the opportunity to appeal denial of their lost property claims to either the facility superintendent or the central office, depending on the amount of the claim, and then to the New York Court of Claims. N.Y. Comp.Codes R. & Regs. tit. 7, § 1700.3(b). Instead of appealing the administrative denial of the reimbursement claim, Brownell filed an Inmate Grievance Complaint at Shawangunk "challenging said denial" on December 10, 2000. Brownell has testified that he abandoned his lost property claim, and filed a grievance instead, at the direction of the Shawangunk Inmate Grievance Program Supervisor. The grievance requested an investigation into the lost property but did not allege that corrections personnel had in-

tentionally interfered with the transfer of that property:

> Upon transfer from Woodbourne Corr. Facility to Eastern N.Y. Corr. Facility most of my personal property has been lost. This includes all of my legal work amounting to thousands of pages. I was in the process of filing [a] federal habeas corpus petition. Shoes, boots, sweaters, headphones, tape player and a number of tapes plus personal sneakers.

As to the requested action, Brownell wrote that he wanted the facility "[t]o find [his] lost property via a thorough investigation."

DOCS's grievance process consists of three stages. First, a grievance is filed with the Inmate Grievance Resolution Committee ("IGRC"). Next, an inmate may appeal an adverse decision to the prison superintendent. Finally, an inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *See Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004) (reviewing DOCS grievance procedure under N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7(c)(4)).

Brownell pursued his grievance through each of these stages. After reviewing the grievance, the IGRC recommended that Brownell "should file a [property] claim with Woodbourne." Second, Brownell appealed that decision to Leonard A. Portuondo, the Superintendent of Shawangunk. At this stage of the *grievance* procedure, Superintendent Portuondo advised Brownell "to appeal his *claim* disapproval to the Superintendent," presumably referring to the lost property claim that Brownell had originally filed. In the third stage, Brownell appealed Portuondo's decision to the CORC, claiming, "I do not feel a thorough investigation was done on my lost property claim. Three bags of property made it to Eastern Corr. Facility, what

happened to the other eleven bags?" The CORC upheld the denial of the grievance on February 21, 2001, with the following explanation:

> Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied with clarification. CORC upholds the determination of the Superintendent for the reasons stated ... CORC has been advised by the facility administration that *the grievant filed a personal property claim for reimbursement but the claim was denied on 11/14/00. The grievant has the opportunity to appeal any denial of a claim in accordance with Directive # 2733.*

(emphasis added). Like the decision of Shawangunk Superintendent Portuondo, the CORC shifted the emphasis from Brownell's grievance to his earlier filed property claim.

### III.  *Proceedings in the District Court*

On July 19, 2001, Brownell filed the present lawsuit alleging that defendants intentionally failed to document and account for his property during the transfer and that these actions "concerning [his] loss of legal materials due to confiscation, destruction and/or disposal were done in retaliation for [his] cooperation with the D.O.C.S. Inspector General's Office" and "in retaliation for [his] possession of unauthorized documents." Brownell alleges that, after his grievance was denied administratively, he independently investigated his lost property claim and discovered evidence that its disappearance was the result of the named defendants' intentional misconduct. Ruling on the defendants' summary judgment motion, the district court dismissed Brownell's complaint for failure to exhaust his administrative remedies under the PLRA. Noting that Brownell's administrative grievance was for the recov-

ery of lost property, whereas his federal complaint alleged deliberate mishandling of his property, the district court found that Brownell had not properly pursued administrative procedures to redress the conduct alleged in the complaint:

> Because Brownell failed to name the defendants named here and assert the denial of his right of access to the courts during the administrative process, he failed to exhaust his administrative remedies under section 1997e(a) with regard to these two issues. As a result, defendants are entitled to summary judgment dismissing Brownell's claim.

*Brownell v. Krom,* No. 01–CIV–6568, 2004 WL 2516610, at *5 (S.D.N.Y. Nov.8, 2004).

### Standard of Review

■ We review a district court's grant of summary judgment *de novo,* viewing the facts in the light most favorable to the non-moving party. *See Taylor v. Rodriguez,* 238 F.3d 188, 191 (2d Cir.2001). Because appellant proceeded *pro se* below, we read his papers " 'liberally and interpret them to raise the strongest arguments that they suggest.' " *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999)).

### Discussion

This case presents two related issues: (1) whether Brownell's administrative grievance was sufficient on its face to exhaust his administrative remedies as to his § 1983 claims and (2) if the grievance was not sufficient, whether "special circumstances" justified Brownell's failure to exhaust such that his federal claims should be permitted to go forward on the merits.

### I. *Exhaustion Under the PLRA*

■ 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The purpose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits ... [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (quoting *Porter,* 534 U.S. at 524–25, 122 S.Ct. 983).

■ Consistent with PLRA objectives, we have held that "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that " '[a]s in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.' " *Id.* (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002)). While this Court has found it appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally. *Id.*

Defendants here contend that the grievance was insufficient on its face to alert the prison that Brownell was complaining of intentional misconduct by corrections officers that violated his constitutional rights. Consequently, prison officials treated Brownell's grievance merely as a request for the recovery of lost property. Brownell responds that his grievance "objected intelligibly to some asserted shortcoming" and therefore he has satisfied the PLRA's exhaustion requirement.

■■ We have little difficulty concluding that Brownell's grievance did not sufficiently allege intentional misconduct. The grievance stated that "[u]pon transfer from Woodbourne Corr. Facility to Eastern N.Y. Corr. Facility most of [his] personal property ha[d] been lost." He then listed the various items, including legal papers he intended to use in support of his anticipated petition for habeas corpus. As there were no allegations of misconduct by corrections officers, that grievance was simply a claim for property lost in transit from Woodbourne to Shawangunk, a claim that does not trigger the level of investigation that a grievance suggesting retaliation would trigger. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.11(a)(b) (specifying a distinct investigation process for claims of harassment); *cf. Johnson v. Johnson,* 385 F.3d 503, 518 n. 9 (5th Cir.2004) ("[A]

grievance that suggested [harassment] could be expected to produce a different kind of administrative response" than a claim that did not suggest harassment.).[1]

## II. *Special Circumstances and the Failure to Exhaust*

■ In *Hemphill,* we fashioned a three-part inquiry "appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." *Hemphill,* 380 F.3d at 686. First, the court must ask:

whether administrative remedies were in fact "available" to the prisoner. [Second], [t]he court should also inquire ... whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [Third], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether *special circumstances* have been plausibly alleged that justify the prisoner's failure

---

**1.** We do not, however, agree with the district court that Brownell's failure to claim in his grievance a denial of his right of access to the courts renders the claim before us unexhausted. *Brownell,* 2004 WL 2516610, at *5. As a general matter, a prisoner need not articulate legal theories in his grievance to exhaust administrative remedies under the PLRA, *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004), and Brownell's grievance did state that he was preparing to file a habeas corpus petition in federal court. We note that defendants concede that "DOCS did not need to know that this legal theory was involved in order to conduct an effective investigation."

Rather, it was Brownell's omission of an allegation of misconduct that impeded investigation.

Similarly, we disagree with the district court that Brownell's failure to name individual defendants in his grievance rendered the claim before us unexhausted. *Brownell,* 2004 WL 2516610, at *5. We need not confront the abstract question of when such naming is required because the defendants here readily admit that such naming was not necessary in this case to give prison officials notice sufficient to resolve Brownell's grievance. Thus, Brownell's failure is of no moment.

to comply with administrative procedural requirements.

*Id.* (emphasis added; internal citations omitted).

■■■■ We have recognized, therefore, that in some cases "special circumstances" may justify a prisoner's failure to comply with administrative procedural requirements. *Id.; see also Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004). What constitutes justification in the PLRA context "must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano,* 380 F.3d at 678. "The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.* at 676. Brownell contends that special circumstances justified his failure to grieve of misconduct. We agree.

■■■■ Prison officials erroneously interpreted administrative regulations and consequently refused to investigate the circumstances of Brownell's lost-property claim and grievance. After Brownell arrived at Shawangunk, he filed a claim for reimbursement for lost property only to be told that "[p]roperty missing prior to this facility would not be the responsibility of this facility." The Shawangunk IGRC repeated this direction in response to Brownell's subsequent grievance. This directive contradicts New York regulations, which provide that "[t]he facility in which the inmate is housed at the time the claim is filed is responsible for investigating and processing an inmate claim." N.Y. Comp. Codes R. & Regs. tit. 7, § 1700.5(a). The regulations further provide that in the case of a transferred inmate like Brownell, "the facility in which the loss occurred must cooperate with the processing facility and provide investigative assistance as requested." *Id.* § 1700.5(b). Under New York regulations, therefore, Shawangunk was responsible for processing the claim with the cooperation of the other correctional facilities. However, it appears that no efforts were made to locate Brownell's property at Shawangunk or elsewhere.

Exhaustion generally requires a prisoner to seek redress for errors at lower levels of administrative review by administrative appeal. Brownell did, in fact, take his grievance through all three layers of administrative appeal, thereby giving superior prison officials a chance to correct errors below. The superintendent and CORC evidently thought that the grievance deserved no consideration because it was duplicative of the earlier reimbursement claim, which had been denied and not appealed from. While this might have been a valid basis to deny the grievance on appeal under normal circumstances, here, Brownell's decision to abandon his reimbursement claim and pursue the grievance instead is directly traced to a prison official's advice to Brownell to follow that course. As a result of heeding this advice, Brownell could no longer appeal his reimbursement claim once the superintendent and CORC had upheld the denial of his grievance because the time for doing so had then passed. *Id.* § 1700.4(d). In this special circumstance, we can hardly impute the frustration of administrative appellate review to Brownell.

Brownell alleges that these errors in the investigation of his lost-property claim forced him to conduct his own investigation, which resulted in his purported discovery of documentation suggesting that his property was lost by intentional mishandling. Brownell discovered the new evidence several months after his property disappeared, which placed him outside of the fourteen-day time limit for filing griev-

ances imposed by prison regulations. *See id.* § 701.7(a)(1). Brownell thus could not have complied with the fourteen-day requirement; however, he could have sought to file a new grievance under the "mitigating circumstances" exception to that requirement. *See id.* Nonetheless, we conclude that Brownell's failure to seek the further administrative remedies that were available to him was reasonable. The grievance form used by the prison facility does not advise inmates of the "mitigating circumstances" exception; nor are we advised of any other means whereby prisoners may—upon discovering material facts that may change the nature of their complaint—file a separate new grievance or seek to amend an existing one.

In sum, we find there to be special circumstances justifying noncompliance with the exhaustion requirements of the PLRA in this case because (1) prison officials erroneously refused to investigate the circumstances of Brownell's lost-property claim and frustrated administrative appellate review of this error and (2) after Brownell subsequently conducted his own investigation into the circumstances surrounding his lost property, he reasonably believed that he could not raise the new facts discovered in administrative proceedings.

Having found that special circumstances justify Brownell's failure to exhaust, we must determine whether administrative remedies are still available to Brownell (in which case dismissal without prejudice was the proper disposition) or whether administrative remedies are unavailable to him (in which case the suit should proceed on the merits). *Giano,* 380 F.3d at 679–80. In this case, the latter is true. Appellant informs this Court that after the district court dismissed his § 1983 complaint, he attempted to file a new grievance alleging that specified officers "maliciously" lost his property, i.e., alleging the very facts that the district court found lacking in his original grievance. The CORC dismissed that second grievance as untimely. This confirms that Brownell no longer has administrative remedies available. Thus, under *Hemphill* and *Giano,* we reverse the district court's order granting summary judgment and remand this case to the district court with instructions to allow Brownell's suit to proceed on the merits.

## Conclusion

For the foregoing reasons, we REVERSE the district court's order granting summary judgment and REMAND this case for further proceedings consistent with this opinion.