Reversed and remanded by published opinion. Judge GREGORY wrote the majority opinion, in which Chief Judge TRAXLER joined. Judge AGEE wrote a dissenting opinion.
*695 GREGORY, Circuit Judge:
Inmate Shaidon Blake appeals the district court’s summary dismissal of his 42 U.S.C. § 1983 claim against Appellee Lieutenant Michael Ross on the ground that Blake failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (“PLRA”), 42 U.S.C. § 1997e(a). Because we hold that Blake reasonably believed that he had sufficiently exhausted his remedies by complying with an internal investigation, we reverse the judgment of the district court and remand for further proceedings.
I.
A.
Since we are reviewing a grant of summary judgment, the following account frames the facts in the light most favorable to Blake, the non-movant, and draws all reasonable inferences in his favor. Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir.2009). On June 21, 2007, Ross and Lieutenant James Madigan approached Blake’s cell at the Maryland Reception Diagnostic and Classification Center. Madigan ordered Blake to gather his possessions so that he could be moved to another cell block. When Blake asked why he was being moved, Madigan called him a “bad ass” and a “tough guy” and accused him of trying to take over the housing unit.
Ross entered the cell and handcuffed Blake’s hands behind his back. When Ross escorted Blake out of the cell and towards the top of the stairs, Madigan reached out and grabbed Blake’s arm. Blake told Madigan to “[g]et the fuck off’ him. Ross got the impression that there might have been some preexisting tension between Blake and Madigan.
Ross, still holding Blake in an escort grip, led Blake down the concrete stairs with Madigan following closely. As he did so, Madigan suddenly shoved Blake from behind. Blake had to push against the railing with his elbow to keep himself from falling down the stairs. Blake told Madi-gan not to push him. Ross assured Madi-gan that he had Blake under control and continued walking down the stairs.
At the bottom of the stairs, Madigan shoved Blake again. Blake told Madigan, “Don’t fucking push me no more.” When they reached the pod door, Madigan ordered Blake to stand against the wall of the corridor. He then stepped into the pod and spoke with the corridor officer inside. When he returned he was “agitated,” and he began “yelling and screaming and pointing in [Blake’s] face.” J.A. 522-23. With Ross still holding Blake against the wall, Madigan wrapped a key ring around his fingers and then punched Blake at least four times in the face in quick succession. Madigan paused briefly, then punched Blake in the face again.
While Ross continued to hold Blake, Ma-digan ordered Latía Woodard, a nearby officer, to mace Blake. Woodard refused. Ross told Woodard to radio a “Signal 13” — a code to summon other officers for assistance. He and Madigan then took Blake to the ground by lifting him up and dropping him. Ross dropped his knee onto Blake’s chest, and he and Madigan restrained Blake until other officers arrived.
The responding officers took Blake to the medical unit; Blake, surrounded by guards and fearful of being attacked again, declined treatment even though he was in pain. He was later diagnosed with nerve damage.
That same day, Blake reported the incident to senior corrections officers and provided a written account. The Internal Investigative Unit (“HU”) of the Maryland Department of Public Safety and Corree- *696 tional Services (“Department”) undertook a year-long investigation and issued a formal report. The report confirmed that Madigan had used excessive force against Blake by striking him in the face while he was handcuffed. The report did not assign any fault to Blake and did not recommend any disciplinary action against him.
B.
Blake filed a pro se § 1983 complaint on September 8, 2009 against Ross, Madigan, two supervisors, and three government entities. The district court dismissed sua sponte the claims against the government entities. Ross and the two supervisors filed an answer on November 19, 2009, and moved to dismiss or for summary judgment on February 4, 2010.[1] None of the defendants asserted an exhaustion defense in either the answer or the motion. The district court granted summary judgment as to the supervisors but denied it as to Ross, finding that Blake had presented genuine issues of material fact regarding whether Ross committed a constitutional violation. The court ordered that counsel be appointed to represent Blake.
On August 2, 2011 — nearly two years after filing Ross’s answer to Blake’s complaint — Ross’s counsel contacted counsel for Blake and Madigan and requested consent to file an amended answer. Blake’s counsel agreed on the condition that Ross’s counsel consent to the filing of an amended complaint at a later date. The parties did not discuss the specific contents of the amended answer, which Blake became aware of for the first time that afternoon when Ross filed his motion to amend. The amended answer included a new affirmative defense alleging that Blake had failed to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Less than a day later, without giving Blake any opportunity to object, the district court granted the motion to amend.
Blake moved to strike Ross’s exhaustion defense on the ground that it had been waived. While that motion was pending, Blake filed an amended complaint, and Ross reasserted his exhaustion defense in his answer. Blake again moved to strike Ross’s exhaustion defense. On January 9, 2012, Ross moved for summary judgment on the ground that Blake had failed to exhaust his administrative remedies. On May 10, 2012, the district court denied Blake’s motion to strike and granted summary judgment to Ross and Madigan. Blake filed a motion for reconsideration, in response to which the court reinstated Blake’s claim against Madigan (who had not joined Ross’s motion), but refused to reinstate his claim against Ross. Blake ultimately prevailed against Madigan at trial. On August 9, 2013, Blake timely appealed the dismissal of his claim against Ross.
II.
On appeal, Blake argues that 1) Ross waived his exhaustion affirmative defense by failing to assert it in his initial answer or motion for summary judgment, and 2) even if Ross did not waive the defense, Blake exhausted his administrative remedies as required by the PLRA by complying with the IIU investigation. Because we find that Ross’s exhaustion defense is without merit, we do not reach the issue of whether he waived the defense.
A.
We review de novo the district court’s grant of summary judgment, viewing all facts in the light most favorable to *697 the non-movant and drawing all reasonable inferences therefrom in his favor. Pueschel, 577 F.3d at 563. Because an inmate’s failure to exhaust administrative remedies is an affirmative defense, Ross bears the burden of proving that Blake had remedies available to him of which he failed to take advantage. Jones v. Bock, 549 U.S. 199, 211-12, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.2008).
B.
The PLRA requires an inmate to exhaust “such administrative remedies as are available” before filing an action. 42 U.S.C. § 1997e(a). This requirement is one of “proper exhaustion”:. an inmate is not excused from the requirement simply because a previously available administrative remedy is no longer available. Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). However, “an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.” Moore, 517 F.3d at 725.
The Department provides inmates with a number of administrative avenues for addressing complaints and problems. At issue here is the interaction between two of those processes: the Administrative Remedy Procedure (“ARP”),[2] and the IIU.
The ARP is available for “all types of complaints” except “case management recommendations and decisions,” “Maryland Parole Commission procedures and decisions,” “disciplinary hearing procedures and decisions,” and “appeals of decisions to withhold mail.” Maryland Division of Correction, Inmate Handbook 30 (2007) (hereinafter “Handbook ”). The ARP involves a three-step process: the inmate files a request for remedy with the warden, then appeals a denial to the Commissioner of Corrections, and finally appeals any subsequent denial to the Inmate Grievance Office (“IGO”). See id. at 30-31; Md.Code Regs. § 12.07.01.05(B); Chase v. Peay, 286 F.Supp.2d 523, 529 (D.Md.2003) (describing the process); Thomas v. Middleton, No. AW-10-1478, 2010 WL 4781360, at *3 (D.Md. Nov. 16, 2010) (same).
In addition to the ARP, the Department administers the Internal Investigative Unit, or IIU. The IIU is responsible for investigating, among other things, “allegation[s] of excessive force by an employee or nonagency employee.” Md.Code Regs. § 12.11.01.05(A)(3). Any employee with knowledge of an alleged violation within the scope of the IIU’s investigative authority must file a complaint. Id. § 12.11.01.09(A). Alternatively, an inmate may file a complaint directly. Id. .§ 12.11.01.09(E).
Blake’s encounter with Madigan and Ross was investigated by the IIU after Blake immediately reported the incident to. senior corrections officers; Blake never filed an administrative grievance through the ARP. Ross contends that the ARP was available to Blake despite his ongoing IIU investigation. Blake argues that the investigation removed his grievance from the ARP process. To resolve this issue, we first examine in greater detail the legal standard Ross must meet to prove his exhaustion defense, and then apply that standard to Blake’s situation.
i.
The Supreme Court has identified three primary purposes of the PLRA’s exhaustion requirement: 1) “allowing a *698 prison to address complaints about the program it administers before being subjected to suit,” 2) “reducing litigation to the extent complaints are satisfactorily resolved,” and 3) “improving litigation that does occur by leading to the preparation of a useful record.” Jones, 549 U.S. at 219, 127 S.Ct. 910. To serve these ends, the Court has interpreted the requirement quite strictly to require “proper exhaustion.” Woodford, 548 U.S. at 93, 126 S.Ct. 2378.
Still, the exhaustion requirement is not absolute. See Moore, 517 F.3d at 725. As Justice Breyer noted in his concurrence in Woodford, administrative law contains “well-established exceptions to exhaustion.” 548 U.S. at 103-04, 126 S.Ct. 2378 (Breyer, J., concurring). Justice Breyer pointed to the Second Circuit’s holding in Giano v. Goord, 380 F.3d 670 (2d Cir.2004), which applied these well-settled exceptions to the PLRA:
[Tjhere are certain “special circumstances” in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner’s failure to comply with administrative procedural requirements may nevertheless have been justified.
380 F.3d at 676. The court went on to find that the inmate’s failure to exhaust available remedies “was justified by his reasonable belief’ that no further remedies were available. Id. at 678.
Of course, in reading longstanding administrative law exceptions into the PLRA’s exhaustion requirement, the Second Circuit was mindful of the purposes of the PLRA. It therefore developed a two-pronged inquiry: first, whether “the prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison’s remedial system was confusing,” and second, “whether the prisoner’s submissions in the disciplinary appeals process exhausted his remedies in a substantive sense by affording corrections officials time and opportunity to address complaints internally.” Macias v. Zenk, 495 F.3d 37, 43 (2d Cir.2007) (emphasis in original) (alterations and internal quotation marks omitted); see also Johnson v. Testman, 380 F.3d 691, 696-97 (2d Cir.2004). By requiring both a procedural and a substantive component, the Second Circuit has implemented traditional principles of administrative law in a manner consistent with the purposes of the PLRA’s exhaustion requirement. The procedural prong ensures that an uncoun-seled inmate attempting to navigate the grievance system will not be penalized for making a reasonable, albeit flawed, attempt to comply with the relevant administrative procedures. Meanwhile, the substantive prong safeguards a prison from unnecessary and unexpected litigation. We are persuaded that this formulation strikes the appropriate balance between statutory purpose and our administrative jurisprudence. We therefore adopt the Second Circuit’s exception to the PLRA’s exhaustion requirement as articulated in Macias and Giano.
ii.
Clearly Blake’s IIU investigation satisfied the substantive component of the exception to exhaustion discussed above. The Department conducted a one-year investigation into Blake’s violent encounter with Madigan and Ross, at the conclusion of which it issued Madigan an Unsatisfactory Report of Service and relieved him of *699 his duties as a corrections officer.[3] J.A. 375-77. As the dissent notes, post at 704, the investigation “examine[d] employee conduct,” which forms the core of Blake’s claim under § 1983. Furthermore, the dissent’s fears that the Department did not have an adequate chance to address potential complaints against Ross, as opposed to Madigan, are unfounded. Blake did not file a targeted complaint against Madigan, but rather reported the incident as a whole, naming both Madigan and Ross in his account. J.A. 329-33. Investigating officers were well aware of Ross’s involvement, and they collected testimony regarding his role in the incident from a number of sources, including a statement from Ross himself. See, e.g., J.A. 289-91, 299-300, 305, 307-11. The Department certainly had notice of Blake’s complaint, as well as an opportunity to develop an extensive record and address the issue internally.
The question remains whether Blake’s interpretation of the relevant regulations was reasonable. Blake had three formal sources of information about the administrative grievance process available to him: the Handbook, the Maryland Code of Regulations (“the Regulations”), and the Maryland Department of Correction Directives (“the Directives”).[4] The 2007 version of the Handbook contains approximately one page of information about the ARP and the IGO. Handbook 30-31. This page lists “types of complaints” for which the ARP is not available: “case management recommendations and decisions,” “Maryland Parole Commission procedures and decisions,” “disciplinary hearing procedures and decisions,” and “appeals of decisions to withhold mail.” Id. at 30. Although this list does not include complaints undergoing internal investigation, it is reasonable to read it as a list of content-based rather than procedural exemptions. Indeed, the Handbook makes no mention of the IIU or the internal investigation process whatsoever; there is no basis for an inmate to conclude that the ARP and IIU processes would be permitted to proceed concurrently.
The Regulations and the Directives are similarly ambiguous. Only one provision of the Regulations mentions both the ARP and the IIU. Md.Code Regs. § 12.11.01.05(B). That provision addresses when an employee involved in the ARP process must report an allegation to the IIU, but it says nothing about the disposition of the ARP complaint should the IIU initiate an investigation. And the only directive cited by Ross that mentions both processes is DCD 185-003, which did not take effect until after Blake’s encounter with the officers.[5] Therefore, Ross has *700 proffered no evidence that would contradict Blake’s belief that the IIU’s investigation removed his complaint from the typical ARP process.[6]
Ross argues that the lack of information in the Handbook, Regulations, and Directives should be read to mean Blake had no reason to believe he could not file an ARP request once the IIU had initiated its investigation.[7] But construing the ambiguities against Blake improperly relieves
Ross of his burden of proving his affirmative defense. See Jones, 549 U.S. at 211-12, 216, 127 S.Ct. 910. Furthermore, at the summary judgment stage we must draw all reasonable inferences in favor of Blake, the non-movant. See Pueschel, 577 F.3d at 563. The Handbook, Regulations, and Directives do not contradict Blake’s belief that he had exhausted his administrative remedies by reporting the incident to senior corrections officers, thereby initiating an IIU investigation.[8] Furthermore, *701 Ross has provided no practical examples of an inmate being allowed to file an ARP or IGO grievance during or after an HU investigation. Blake reasonably interpreted Maryland’s murky inmate grievance procedures, and the IIU investigation into his complaint provided the Department with ample notice and opportunity to address internally the issues raised. We therefore hold that the district court erred in granting summary judgment to Ross on the basis of his exhaustion defense.
III.
For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED.

. Blake did not successfully serve Madigan until January 26, 2011.

. We also briefly discuss the Inmate Grievance Office, which hears appeals from the ARP and rules in the first instance on other grievances, supra.

. Rather than facing dismissal, Madigan chose to resign. J.A. 566.

. Blake testified that he did not read all of the relevant directives. See J.A. 162-63. We agree with the dissent that an inmate’s ignorance of available procedures is not sufficient to excuse a failure to. exhaust remedies. That is why, for the purposes of the exception we adopt today, we assume that the inmate possessed all available relevant information when determining whether he held an objectively reasonable belief that he had exhausted all available avenues for relief.

.DCD 185-003, which went into effect on August 27, 2008, makes clear that an ARP complaint will be dismissed for procedural reasons "when it has been determined that the basis of the complaint is the same basis of an investigation under the authority of the Internal Investigative Unit (IIU),” and allows an inmate to appeal that dismissal. Ross argues that this directive proves that Blake could have filed an ARP complaint at the time of the incident. Blake counters that the directive is the first contemplation of a coexistence between the ARP and IIU investigations. Regardless, DCD 185-003 did not exist when the IIU began investigating Blake’s com *700 plaint, and therefore it is at best tangentially related to whether his belief that he could not pursue an ARP claim was reasonable.

. Ross also contends that Blake could have filed a complaint with the IGO in the first instance. The Handbook states that ‘‘[t]he IGO reviews grievances and complaints of inmates against the Division of Correction ... after the inmate has exhausted institutional complaint procedures, such as the Administrative Remedy Procedure.” Handbook at 30 (emphasis added). And the Regulations provide that an inmate must file a grievance with the IGO within 30 days of the date that the "[sjituation or occurrence that is the subject of the grievance took place,” unless the grievance is based on an appeal from the ARP or a disciplinary proceeding. Md.Code Regs. §§ 12.07.01.05(A)-(C). Clearly Blake could not appeal from an ARP or disciplinary proceeding; the only complaint he lodged was a report to corrections officers that initiated an IIU investigation. Given that the IIU investigation of Blake’s complaint lasted for a year and was therefore not "exhausted” within 30 days of his encounter, it was certainly reasonable for Blake to believe he could not file a grievance with the IGO.

. Alternatively, Ross urges us to affirm the district court on the ground that Ross prevails on the merits. As Blake notes, however, it is typically "more appropriate to allow the district court to consider [alternative grounds for affirmance] in the first instance on remand.” Q Int’l Courier, Inc. v. Smoak, 441 F.3d 214, 220 n. 3 (4th Cir.2006); see also McBurney v. Cuccinelli, 616 F.3d 393, 404 (4th Cir.2010) (declining to address merits of § 1983 claim in the first instance). Therefore, we remand to afford the district court the opportunity to address the merits of Blake’s claims.

.Blake is not alone in his understanding of the interaction between the ARP and the IIU. In Giano, the Second Circuit found it relevant that "a learned federal district court judge [had] not long ago endorsed an interpretation of DOCS regulations nearly identical to Giano's.” 380 F.3d at 679. Here, at least three district court judges have found that an internal investigation removes an inmate's complaint from the ARP process. See Thomas v. Bell, No. AW-08-2156, 2010 WL 2779308, at *4 & n. 2 (D.Md. July 7, 2010); Williams v. Shearin, No. L-10-1479, 2010 WL 5137820, at *2 n. 2 (D.Md. Dec. 10, 2010); Bogues v. McAlpine, No. CCB-11-463, 2011 WL 5974634, at *4 (D.Md. Nov. 28, 2011).
Ross argues that these cases are inapposite because they relied on DCD 185-003, which requires dismissal of an ARP complaint if it shares its basis with an IIU investigation. But at least one of these cases was filed before that directive issued. Thomas, 2010 WL 2779308, at *1 (noting that Thomas filed his complaint on August 18, 2008); see also DCD 185-003 (issued and effective on August 27, 2008). Of the remaining two opinions, only one refers (opaquely) to a dismissal under DCD 185-003. See Bogues, 2011 WL 5974634, at *4 (citing an exhibit to the officer’s motion to dismiss). The second such opinion reasons that, although the inmate did not file an ARP complaint, the fact that "prison officials were aware of his concerns, convened an internal investigation, and regularly met to review [the inmate’s] classification and security status” was sufficient to satisfy the exhaustion requirement. Williams, 2010 WL 5137820, at *2 n. 2. Therefore, even if Ross is correct that Blake could have filed a complaint through the ARP while his IIU investigation was pending, the grievance system is *701 confusing enough that at least two learned judges have reached the opposite conclusion.