**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1474**

S.B., a minor, by and through his Guardian and next friend,
A.L.; T.L., in his own right,

        Plaintiffs – Appellants,

    and

A.L., in her own right,

        Plaintiff,

    v.

BOARD OF EDUCATION OF HARFORD COUNTY,

        Defendant – Appellee,

    and

DR. ROBERT TOMBACK; WILLIAM LAWRENCE; MICHAEL O'BRIEN,

        Defendants.

------------------------------------------

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

        Amicus Supporting Appellants,

NATIONAL SCHOOL BOARDS ASSOCIATION; MARYLAND ASSOCIATION OF
BOARDS OF EDUCATION,

        Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:13-cv-01068-JFM)

———————

Argued: January 27, 2016                    Decided: April 8, 2016

———————

Before WYNN and HARRIS, Circuit Judges, and Loretta C. BIGGS, United States District Judge for the Middle District of North Carolina, sitting by designation.

———————

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Wynn and Judge Biggs joined.

———————

**ARGUED**: Martin Jay Cirkiel, CIRKIEL & ASSOCIATES, P.C., Round Rock, Texas; Tracy Diana Rezvani, REZVANI VOLIN P.C., Washington, D.C., for Appellants. Andrew G. Scott, PESSIN KATZ LAW, P.A., Towson, Maryland, for Appellee. **ON BRIEF**: Edmund J. O'Meally, PESSIN KATZ LAW, P.A., Towson, Maryland, for Appellee. Selene Almazan-Altobelli, COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC., Towson, Maryland; Mark B. Martin, LAW OFFICES OF MARK B. MARTIN, P.A., Baltimore, Maryland, for Amicus Council of Parent Attorneys and Advocates. Francisco M. Negrón, Jr., General Counsel, NATIONAL SCHOOL BOARDS ASSOCIATION, Alexandria, Virginia, for Amici National School Boards Association and Maryland Association of Boards of Education.

———————

PAMELA HARRIS, Circuit Judge:

This case arises from the student-on-student bullying and harassment of S.B., a disabled student who attended Aberdeen High School in Harford County, Maryland. S.B., by and through his mother, A.L., sued the Harford County Board of Education (the "Board"), alleging primarily that by allowing other students to harass S.B. based on his disability, the Board violated § 504 of the Rehabilitation Act. S.B.'s stepfather, T.L., a teacher and athletic director at Aberdeen High School, sued in his own right, claiming that the Board also violated § 504 by retaliating against him for advocating on S.B.'s behalf.[1]

After extensive discovery, the district court granted summary judgment to the Board, holding that there was no record evidence to support either S.B.'s or T.L.'s claims. And while we sympathize with students and parents who face school bullying issues, we agree. S.B. has provided no evidence that the Board acted with the deliberate indifference necessary to hold it liable for student-on-student harassment. Nor does the record substantiate T.L.'s allegation of a causal connection between his advocacy for S.B. and any adverse action taken by the Board. Accordingly, we affirm the judgment of the district court.

---

[1] Like the district court, we refer to S.B. and his parents only by their initials.

## I.

## A.

In reviewing the district court's grant of summary judgment to the Board, we present the facts of the case in the light most favorable to S.B. and T.L., the non-moving parties. See Blake v. Ross, 787 F.3d 693, 695 (4th Cir. 2015).

S.B. was a student with disabilities such as Attention Deficit Hyperactivity Disorder, weak visual-spatial ability, and a nonverbal learning disability.[2] There is no question but that his years at Aberdeen High School, which he entered in the fall of 2010, were difficult ones. S.B.'s fellow students often bullied him, sometimes severely. Some of S.B.'s classmates insulted him using homophobic slurs. Others sexually harassed or physically threatened him. And S.B. faced — and sometimes contributed to — racial tensions with his classmates; in one significant episode, S.B. responded to three black students who had been calling him names with a racial epithet and made other threatening remarks.

S.B. or his parents reported most of these incidents to the school, and the school, in turn, investigated each reported

---

[2] As required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., Aberdeen High School provided S.B. with an Individualized Education Plan and assembled a team to implement that plan. S.B. has not alleged that the school failed to meet its obligations under the IDEA.

4

incident. In almost every case, the school disciplined the offenders, using measures such as student warnings and conferences, parent phone calls, detentions, and suspensions. From January 2013 to June 2013, the school also assigned a school-employed paraeducator to follow S.B. during the school day, monitoring his safety and acting as an objective witness to any alleged acts of bullying.

S.B.'s parents were very concerned about the bullying issues S.B. was confronting at school. Both had close connections to Aberdeen High School: S.B.'s mother A.L. was a substitute teacher, and T.L., as noted above, was the school's athletic director and a physical education teacher. A.L. frequently emailed school principal Michael O'Brien about the bullying of S.B., and O'Brien consistently responded, though not always to A.L.'s satisfaction.

Eventually, both A.L. and T.L. began publicly criticizing and questioning the school's efforts to prevent the harassment of their son. For instance, in November 2012, A.L. posted her email conversation with O'Brien on Facebook in order to publicize her complaints. In the same month, both parents attended a hearing on whether the school should have suspended S.B. for using a racial epithet. In April 2013, A.L. and T.L., along with S.B., filed the original complaint in this action. And after filing this suit, T.L. raised concerns at an October

5

2013 parents' forum about the lack of harassment reporting forms available at the high school.

At around the same time, the school took several actions with respect to T.L. that figure in T.L.'s retaliation claim. In November 2012, O'Brien denied T.L. the opportunity to complete a practicum for his master's degree program on-site at Aberdeen High School. As a result, T.L. instead completed the practicum at the school district's central office, working under the district's athletic supervisor. In the spring of 2013, the school failed to give T.L. tickets to a scholarship banquet for student-athletes. And in April 2013, O'Brien informed T.L. that T.L. would not be teaching the school's summer physical education class that year, though he had taught it for the three previous years.

Just over a year later, in June 2014, S.B. graduated on time from Aberdeen High School. During high school, S.B. consistently achieved passing grades, and in fall 2014, he began taking classes at Harford Community College.

**B.**

In their amended complaint against the Board, filed in July 2013, S.B. and his parents alleged violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq.; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and 42 U.S.C. §§ 1983 and 1985. The gist of all of those

6

claims was that the defendants had discriminated against S.B. based on his disability, primarily by failing to prevent student-on-student bullying and harassment, and retaliated against S.B.'s parents when they sought to remedy that discrimination.

The focus of the case was narrowed in the district court. First, in September 2013, the district court granted in part the Board's motion to dismiss, dismissing from the suit all individual defendants and S.B.'s claims under §§ 1983 and 1985. Subsequently, A.L. voluntarily dismissed her retaliation claims. That left the claims that are before us now: S.B.'s claim of disability-based discrimination under § 504 and the ADA, and T.L.'s claim of retaliation under § 504.

The district court denied the Board's motion to dismiss on those claims, allowing the parties to move forward to discovery. But the court was skeptical that the claims could succeed, expressing doubt that S.B. could establish that the Board had discriminated against him by acting with "deliberate indifference" to student-on-student bullying, or that T.L. could show that the Board had retaliated against him because of his advocacy on behalf of S.B. Memo to Counsel, S.B. v. Bd. of Educ. of Harford Cty., No. 1:13-cv-1068-JFM, ECF. No. 35 (D. Md. Sept. 30, 2013); J.A. 114.

7

After substantial discovery, in April 2015 the district court granted summary judgment to the Board. According to the district court, its initial skepticism "proved to be well-founded." S.B. v. Bd. of Educ. of Harford Cty., 1:13-cv-1068-JFM, slip op. at 1 (D. Md. Apr. 17, 2015) ("District Court Decision"); J.A. 2389. The court observed that "[d]espite the extensive discovery that has been taken and the voluminous papers that have been filed, it is now clear that the action is a frivolous one." Id. at 1–2.

Specifically, regarding S.B.'s claim of disability-based discrimination, the district court first found that "it is not at all clear that any harassment directed toward [S.B.] was on account of his disability." Id. at 2. But the district court rested its decision on a different ground: that there was "absolutely no evidence" in the record that the Board had discriminated against S.B. by acting with "bad faith, gross misjudgment or deliberate indifference in responding to" student-on-student harassment. Id. Instead, the record showed that the "Board investigated every harassment claim against S.B. brought to its attention and assigned a person to be with S.B. throughout the school." Id. As to T.L.'s retaliation claim, the district court concluded that there was "no evidence whatsoever" of a causal link between T.L.'s advocacy of S.B.'s rights and any action taken by the Board. Id.

8

S.B. and T.L. timely appealed the district court's judgment.

## II.

We review the district court's grant of summary judgment de novo. Summary judgment is appropriate "when 'there is no genuine dispute as to any material fact and the movant is entitled to [] judgment as a matter of law.'" Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). We view the facts in the light most favorable to S.B. and T.L. as the non-moving parties and draw all reasonable inferences in their favor. Blake, 787 F.3d at 695. But if "no reasonable jury could find for the nonmoving party on the evidence before it," then we will affirm the grant of summary judgment. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990).

### A.

We begin with S.B.'s claim that the Board discriminated against him based on his disability in violation of § 504 of the Rehabilitation Act. Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal

9

financial assistance." 29 U.S.C. § 794(a). According to S.B.,
he was subjected for years to sustained and pervasive student-
on-student harassment and bullying based on his disability, and
by failing to prevent that harassment, the Board itself engaged
in disability-based discrimination prohibited by § 504.[3]

**1.**

The Supreme Court addressed a very similar claim in Davis
v. Monroe County Board of Education, 526 U.S. 629 (1999), a
student-on-student sexual harassment case brought under Title IX
of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Like
§ 504, Title IX is what is known as Spending Clause legislation,
applying to schools and educational programs that receive
federal funds; and much like § 504, Title IX provides that no
person "shall, on the basis of sex, be excluded from
participation in, be denied the benefits of, or be subjected to
discrimination" in a federally funded program. Id. Given that

---

[3] S.B. also refers on appeal, though only briefly, to his
distinct claim under the ADA. Though his argument is not
entirely clear, S.B. appears to take the position that the Board
engaged in disability-based discrimination under the ADA by
failing to supplement its anti-bullying policy with a special
policy tailored to the needs of disabled students. S.B. cites
no case law in support of such a duty, and we decline to hold
that a school discriminates on the basis of disability unless it
establishes a second and separate anti-bullying policy specific
to disabled students.

10

statutory structure, the Court held in Davis, a school could be liable in damages for student-on-student sexual harassment only if it was "deliberately indifferent" to known acts of such harassment. 526 U.S. at 642, 649.

The Court started with the well-established rule that recipients of federal funds must have adequate notice that they may be liable for certain conduct before a private damages action will be allowed. Id. at 640. It followed, the Court concluded, that schools may not be held liable under Title IX for the misconduct of their students, but only for their "own decision to remain idle in the face of known student-on-student harassment," id. at 641 (emphasis in original) — "intentional conduct that violates the clear terms of the statute," id. at 642. A negligent failure to learn of or react to its students' independent actions, in other words, will not subject a school to liability, but "deliberate indifference to known acts of harassment" will. Id. at 642-43.

Like most of the federal courts to consider the question, we think it clear that the same reasoning applies to § 504 claims arising from student-on-student harassment or bullying. See, e.g., Estate of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 995-96 (5th Cir. 2014) (citing cases from other circuits); S.S. v. E. Ky. Univ., 532 F.3d 445, 454 (6th Cir. 2008) (citing cases from district courts). As noted above,

11

§ 504, like Title IX, is Spending Clause legislation, which means that fund recipients must be on notice that they could be liable for student-on-student wrongdoing — a condition satisfied by intentional and official conduct in the form of "deliberate indifference."  See Davis, 526 U.S. at 640–42.  And § 504's operative language is strikingly similar to Title IX's, prohibiting the same "exclu[sion] from participation," "deni[al] of benefits," and "discrimination" in federally funded programs. See Lance, 743 F.3d at 996 (noting similarities in wording of § 504 and Title IX).  Given these parallels, it plainly follows from Davis that § 504 claims predicated on student-on-student harassment, like their Title IX counterparts, require a showing of deliberate indifference on the part of the funding recipient.

S.B. argues that our circuit has adopted a different standard by holding in Sellers v. School Board of City of Manassas, 141 F.3d 524, 529 (4th Cir. 1998), that a school may be liable for damages under § 504 if it acts with "bad faith or gross misjudgment."  And we note that the district court, likely in an excess of caution, applied the "bad faith or gross misjudgment" standard as well as the "deliberate indifference" standard and held that S.B. could satisfy neither.  See District Court Decision at 2.  But the Sellers standard does not govern this case, because Sellers did not involve school liability for student-on-student misconduct.  Instead, Sellers presented a

12

straightforward claim that a school's own direct conduct — an alleged failure to provide a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA") — constituted § 504 discrimination, and held only that "bad faith or gross misjudgment" was required "in the context of education of handicapped children" to turn an IDEA violation into § 504 discrimination. Sellers, 141 F.3d at 529.[4] To resolve the distinct issues implicated by school liability arising from student misconduct, we are guided not by Sellers but by Davis, which addressed those issues directly.

**2.**

In the § 504 context, the Davis deliberate indifference standard requires a plaintiff like S.B. to show that he was an individual with a disability, harassed by fellow students based on his disability; that the disability-based harassment was sufficiently "severe, pervasive, and objectively offensive" that it effectively deprived him of "access to educational benefits and opportunities" at school, Davis, 526 U.S. at 650; and that the school knew about the disability-based student-on-student

---

[4] We took the same view of Sellers in Shirey ex rel. Kyger v. City of Alexandria Sch. Bd., 229 F.3d 1143, 2000 WL 1198054, at *4 (4th Cir. 2000) (unpublished table decision), explaining that Sellers "adopted the heightened standard of 'bad faith or gross misjudgment' for proving discrimination in the specific context of developing appropriate [Individualized Education Plans] for disabled children" under the IDEA.

13

harassment and was deliberately indifferent to it.  See Lance, 743 F.3d at 996; S.S., 532 F.3d at 454; cf. Davis, 526 U.S. at 649–50 (same under Title IX).  Like the district court, we conclude that on the record evidence in this case, no reasonable jury could find that S.B. has made the necessary showing.

The district court held first that "it is not at all clear" that S.B. could establish that the student-on-student bullying he suffered and reported to the school was based on his disability, as required for a violation of § 504.  District Court Decision at 2.  We agree with that assessment.  Read most generously to S.B., the record contains, at best, only the slightest of evidence that S.B. was harassed because of his disability, mostly in the form of S.B.'s self-serving affidavit. Instead, as the Board argues, S.B's own evidentiary submissions strongly suggest that S.B. most often was the victim (and sometimes the perpetrator) of race-based bullying and slurs — conduct that is deplorable and damaging in its own right, but cannot give rise to § 504 liability.

Moreover, though there is no question but that the school was on notice that S.B. was being bullied, there is very much a question as to whether the school knew of any disability-based bullying, as would be required for S.B. to prevail under the Davis standard.  Even assuming that S.B. was on occasion harassed because of his disability, none of the email

14

communications or harassment reports filed by S.B. or his parents and included in the record informed the school of that fact. S.B. argues that the school should have known, by way of investigation, that the harassment of which he complained was based on his disability — but the Supreme Court rejected precisely that negligence standard in Davis, 526 U.S. at 642 (declining to impose liability under "what amount[s] to a negligence standard" for failure to respond to harassment of which a school "knew or should have known" (emphasis in original)), and we cannot employ it here.

In any event, and like the district court, we find that whatever the nature of the harassment directed at S.B., there is no record evidence suggesting that the Board responded to it with the deliberate indifference required by Davis. See District Court Decision at 2. Davis sets the bar high for deliberate indifference. The point, again, is that a school may not be held liable under Title IX or § 504 for what its students do, but only for what is effectively "an official decision by [the school] not to remedy" student-on-student harassment. 526 U.S. at 642. Thus, it is not enough that a school has failed to eliminate student-on-student harassment, or to impose the disciplinary sanctions sought by a victim. Id. at 648; see Lance, 743 F.3d at 996 (under Davis standard, "[s]ection 504 does not require that schools eradicate each instance of

15

bullying from their hallways to avoid liability"). Instead, a school will be liable for student-on-student harassment only where its "response . . . or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648.

Without making any effort to tie his argument to the record, S.B. asserts generally that the Board either did nothing in response to repeated complaints about the bullying he confronted, or failed to investigate and address those complaints in a meaningful way.[5] But the record is squarely to the contrary. First, the record shows conclusively that the school in fact investigated every single incident of alleged harassment of which it was informed by S.B. or his parents. And in nearly every case, the school disciplined offenders with measures ranging from parent phone calls to detentions to suspensions. Finally, as the district court emphasized, from January 2013 to June 2013, the school assigned a paraeducator — a school professional who works with students — to accompany

---

[5] In the fact section of his brief, S.B. alleges generally that, with two exceptions, "no formal disciplinary or other remedial action[] was taken against students who bullied S.B." Appellants' Br. at 26. That claim is flatly belied by the record, which contains evidence of numerous disciplinary actions beyond the two noted by S.B. See, e.g., J.A. 1797 (parent phone call and letter, student conference and warning, detention); J.A. 1816 (parent phone call and letter, student conference); J.A. 1870 (student conference and warning).

16

S.B. during the school day to ensure S.B.'s safety as well as to provide objective witness to alleged acts of bullying.

There is no "decision to remain idle" on this record — no "official decision by [the school] not to remedy" known student-on-student harassment. See Davis, 526 U.S. at 641–42. That is not to say, of course, that only a complete failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice to shield a school from liability. Where, for instance, a school has knowledge that a series of "verbal reprimands" is leaving student-on-student harassment unchecked, then its failure to do more may amount to deliberate indifference under Davis. Patterson v. Hudson Area Schs., 551 F.3d 438, 448–49 (6th Cir. 2009); see also Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 669–70 (2d Cir. 2012) (school response to student-on-student harassment may be unreasonable where school "dragged its feet" before implementing "little more than half-hearted measures"). But school administrators are entitled to substantial deference when they calibrate a disciplinary response to student-on-student bullying or harassment, see Davis, 526 U.S. at 648; Lance, 743 F.3d at 996–97, and a school's actions do not become "clearly unreasonable" simply because a victim or his parents advocated for stronger remedial measures, Zeno, 702 F.3d at 666. In this case, no reasonable juror could find that the school was less

17

than fully engaged with S.B.'s problems, using escalating disciplinary sanctions to punish and deter student-on-student harassment and taking other protective measures on S.B.'s behalf. Accordingly, as the district court held, S.B. simply cannot make out a case of deliberate indifference under Davis.

**B.**

We now turn to T.L.'s retaliation claim under § 504, which we can dispense with more briefly. Absent direct evidence of retaliation, T.L. may proceed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), making a prima facie case of retaliation by showing (1) that he engaged in protected activity, (2) that the Board took an adverse action against him, and (3) that the adverse action was causally connected to his protected activity. See Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001) (ADA retaliation claim).[6] If T.L. can meet this burden, then the Board must articulate a "legitimate nonretaliatory reason for its actions," at which point the burden shifts back to T.L. to

_____

[6] As the parties agree, retaliation claims under § 504 are subject to the same standard as ADA retaliation claims. See Lyons v. Shinseki, 454 F. App'x 181, 182, 184 (4th Cir. 2011) (per curiam) (unpublished) (applying same standard to ADA and § 504 retaliation claims); Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995) (noting that "the substantive standards for determining liability are the same" under the Rehabilitation Act and the ADA); see also Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010).

18

"demonstrate that the proffered reason is a pretext for forbidden retaliation." Id.

The Board does not dispute that T.L. advocated on behalf of S.B., a disabled student, and thus engaged in protected activity for purposes of a retaliation claim. And although the Board does contest the second element of the analysis, we think it clear that one of the actions identified by T.L. — the decision not to rehire T.L. to teach the summer physical education class he had taught for three previous years — amounted to the kind of "materially adverse" action that can give rise to a retaliation claim. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (Title VII retaliation claim); Rhoads, 257 F.3d at 391 (applying Title VII retaliation standards to ADA retaliation claim). Even if, as the Board argues, T.L. did not have a legally cognizable "expectation of continued employment" as a summer teacher, Appellee's Br. at 55, the loss of a summer job and wages that had been available for the past three years "well might" be enough to "dissuade[] a reasonable worker from making or supporting a charge of discrimination," and that is enough to satisfy the "materially adverse" standard. Burlington, 548 U.S. at 54; see Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010) (loss of salary customarily

19

received for usual extended contract may constitute materially adverse action).[7]

Like the district court, however, we think the Board nevertheless was entitled to summary judgment because no reasonable jury could find the necessary causal connection between the Board's adverse action and T.L.'s protected activity. The Board has come forward with a legitimate and plausible nonretaliatory reason for its decision: According to school principal O'Brien, because of the number of female students enrolled in the summer physical education class, he concluded that the class should be taught by one female and one male teacher, and he selected a male teacher who had more experience than T.L. in teaching physical education. And the next year, when O'Brien needed an additional teacher for the summer of 2014, he chose T.L. for the slot. The burden now shifts to T.L. to demonstrate that this explanation is pretextual, and that the decision to hire the more experienced teacher in 2013 in fact was causally linked to his protected

_____

[7] T.L. complains of two additional actions by the Board: first, the Board's failure to provide him with tickets to a student-athlete scholarship banquet; and second, the Board's decision that he could not complete his practicum at Aberdeen High School, which required him to complete it at the school district's central office instead. Viewing the related facts in the light most favorable to T.L., we are convinced that neither of those actions rises to the level of "materially adverse." See Burlington, 548 U.S. at 68 ("trivial harms" and "minor annoyances" are not actionable in a retaliation claim).

20

activity. But there simply is no record evidence to support that proposition. While the temporal proximity between T.L.'s protected activity and the reassignment of the summer teaching job may be sufficient to make an initial prima facie showing of causation, see Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015), timing alone generally cannot defeat summary judgment once an employer has offered a convincing, nonretaliatory explanation. See Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1066 (10th Cir. 2009). Without more than his own assertions, T.L. cannot meet his burden at summary judgment. See Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 705–06 (4th Cir. 2001) (rejecting plaintiff's retaliation claim at summary judgment because no reasonable jury could find the employer's explanation pretextual).[8]

## III.

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED

---

[8] S.B. and T.L. also appeal the denial of their motion for sanctions based on alleged spoliation of evidence by the Board, and argue that the district court erred in ignoring certain evidentiary objections. We find no error in the district court's ruling on spoliation, and our decision today relies on none of the evidence to which S.B. and T.L. object.