**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1557**

DOROTHY L. BUCHHAGEN, PH.D.,

             Plaintiff - Appellant,

     v.

ICF INTERNATIONAL, INC.; ICF Z-TECH INC.,

             Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   J.  Frederick  Motz,  Senior  District
Judge.  (8:12-cv-02470-JFM)

Argued:  March 22, 2016                 Decided:  May 31, 2016

Before KING, AGEE, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Agee wrote the opinion,
in which Judge King and Judge Floyd joined.

**ARGUED**:  Alan  Banov,  ALAN  BANOV  &  ASSOCIATES,  Silver  Spring,
Maryland, for Appellant.   Jeremy William Dutra, SQUIRE PATTON
BOGGS (US) LLP, Washington, D.C., for Appellees.  **ON BRIEF**:
Stephanie  Rapp-Tully,  ALAN  BANOV  &  ASSOCIATES,  Silver  Spring,
Maryland, for Appellant.  Merrell B. Renaud, SQUIRE PATTON BOGGS
(US) LLP, Tysons Corner, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

Dr. Dorothy Buchhagen, Ph.D., appeals the grant of summary judgment in favor of her former employer, ICF Z-Tech, Inc. ("Z-Tech"),[1] on her claim of retaliation under the Age Discrimination in Employment Act ("ADEA"), pursuant to 29 U.S.C § 623(d). Because Buchhagen failed to meet the causation standard for her claim, we affirm the district court's judgment.

I.

In December 2006, Dr. Deborah Beebe, Ph.D., hired Buchhagen to work on Lockheed-Martin Corporation's Cancer Information Analysis and Tracking ("CIAT") contract with the National Cancer Institute ("NCI"). At that time, Buchhagen was sixty-four years old, and her primary responsibility was writing content for NCI's Dictionary of Cancer Terms ("Glossary"). In June 2009, NCI awarded the CIAT contract to Z-Tech, and Buchhagen applied for her old position with the new contract carrier.[2]

---

[1] ICF International, the parent company of ICF Z-Tech, is also named as a defendant in this case. For ease of reference, the joint defendants shall be referred to as Z-Tech throughout this opinion.

[2] Buchhagen claims that Beebe told her "no one will hire you at your age" in the summer of 2009, shortly before she applied for her position at Z-Tech.

Buchhagen negotiated a salary raise from $30.12 per hour to $60.00 per hour and accepted the position at the age of sixty-seven. Beebe continued as her supervisor. Shortly thereafter, when a colleague left the CIAT contract to work directly at NCI, Beebe confirmed Buchhagen's promotion to be the Glossary and Multimedia Manager.

Not long after Buchhagen began her new position, however, her relationship with Beebe deteriorated. The impetus for this change was Buchhagen's failure to correctly upload a Spanish Hysterectomy Image ("SHI") to the Glossary, which caused the Glossary entry to be defective. Buchhagen insisted this error was a "glitch" rather than her own mistake. Although the problem was eventually corrected, her attitude toward the problem and others' involvement in the solution became contentious. The SHI issue initiated a trend of insubordination and overall problematic behavior by Buchhagen.

Buchhagen met with Beebe and Human Resources personnel to sort out the internal strife arising from the SHI issue; however, Buchhagen believed that Beebe was angry with her because she had received a significant raise from Z-Tech when she was promoted. On October 12, 2009, she recorded notes from their meeting and stated, "I then realized [Beebe] was furious because I had gotten the raise. I also then realized that she would be finding an excuse to terminate me." J.A. 185.

3

In March 2010, Buchhagen received a low proficient rating on her performance evaluation from Beebe. She vociferously contested this rating and provided a rebuttal to it. Shortly thereafter, she set up meetings with Human Resources and other management personnel to complain of what Buchhagen claimed was harassment by Beebe, which included yelling at Buchhagen and pounding her fists on the table. Buchhagen, Beebe, and Human Resources had three meetings to discuss the interpersonal issues, but Buchhagen was ultimately unsatisfied with the progress of Z-Tech's investigation of her complaints.

In June 2010, Z-Tech instituted a plan that would assist Buchhagen in managing the Glossary and that addressed NCI's request to have a backup process. The proposed backup plan also created goals to strengthen the Glossary team and to present a unified front to the client. Buchhagen considered this a "replacement plan" and believed it was a way for Beebe to embarrass and harass her. The record, however, indicates that NCI specifically requested Z-Tech to have backup personnel on the Glossary project in the event of illness, absence, disability or other occurrences.

As June progressed, the relationship between Buchhagen and Beebe continued to deteriorate. Buchhagen involved NCI in internal Z-Tech matters by raising questions about the implementation of the backup plan. She further undermined

4

Beebe's authority by questioning the plan as a mechanism to harass her. In response, Beebe drafted a Process Improvement Plan (PIP) for Buchhagen and sent it to Human Resources. Before it was approved, however, Buchhagen filed a complaint with Human Resources accusing Beebe of harassment in violation of Z-Tech's policy, but made no age-related claim. After review, Human Resources and Z-Tech management approved the PIP for Buchhagen. The PIP was finalized on June 23, 2010, and presented to Buchhagen the next day. It specifically stated, "Failure to demonstrate immediate and sustained improvement in these areas will result in termination of employment." J.A. 323.

Almost immediately after receiving the PIP, Buchhagen attempted to take unscheduled leave. Although she and Beebe resolved the issue, Z-Tech considered this to be a continuation of Buchhagen's defiance and insubordination. On July 14, 2010, Buchhagen failed to organize her back ups for a Glossary meeting with the client and did not inform Beebe about the meeting. Beebe prepared a draft email for Human Resources that reminded Buchhagen of the terms of her PIP and indicated that her performance was not fulfilling those expectations. In short, she cautioned, "This email is to remind you that your employment will be terminated according to the PIP if this continues." J.A. 351. Beebe sent the approved email to Buchhagen on July 20, 2010.

Shortly before receiving Beebe's email, however, Buchhagen sent a document thoroughly detailing all of her complaints of harassment and discrimination to Human Resources. In this document, she noted for the first time her status as a member of a protected class due to her age, among a multitude of other employment practice complaints.

Z-Tech decided to end Buchhagen's employment on or around July 21, 2010, and she was informed of this decision a few days later.

## II.

In 2013, Buchhagen brought this action against Z-Tech, raising claims of hostile work environment, unlawful termination, and retaliation under the ADEA. See Buchhagen v. ICF Int'l, Inc., 545 F. App'x. 217 (4th Cir. 2013). The district court dismissed her complaint in full, and Buchhagen appealed to this Court. Id. at 219. We agreed that Buchhagen failed to allege facts sufficient to state a hostile work environment claim and affirmed the district court's dismissal of that count. Id. at 219–20. As to Buchhagen's claims of wrongful discharge and retaliation, however, we reversed on grounds that her complaint alleged sufficient facts to raise a plausible claim to relief. Id. at 220-21.

On remand to the district court, the parties completed discovery. Z-Tech moved for summary judgment on the remaining claims, and after considering the parties' briefs along with the record evidence, the district court granted Z-Tech's motion. Buchhagen v. ICF Int'l, Inc., No. JFM–12–2470, 2015 WL 727947 (D. Md. Feb. 18, 2015). The district court concluded, "there is no evidence to suggest that defendants discriminated against plaintiff because of her age or that plaintiff has been able to demonstrate either that she was meeting the legitimate expectations of ICF or that the reasons ICF articulated for the termination of her employment were pretextual." Id. at *2.

Buchhagen timely appealed, contesting only the dismissal of her ADEA retaliation claim. We now consider whether she presented sufficient evidence on that claim to survive Z-Tech's motion for summary judgment.

### III.

We review a grant of summary judgment de novo. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 248 (4th Cir. 2015). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Id.[3] "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). Further, "[a] fact is material if it might affect the outcome of the suit under the governing law." Id. The Court must view "the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Id. at 312.

Generally speaking, the ADEA creates a cause of action for employees who allege adverse employment action on the basis of age. 29 U.S.C. § 623(a). An employer can also violate the ADEA by retaliating against an employee for engaging in protected activity, such as filing a complaint of age discrimination. Id. at § 623(d). "To establish a prima facie case of retaliation [under the ADEA], a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

When there is no direct evidence of retaliatory discrimination, which is the case here, the Fourth Circuit

---

[3] This opinion omits internal marks, alterations, citations, emphasis, or footnotes from quotations unless otherwise noted.

8

applies the <u>McDonnell Douglas</u>[4] burden-shifting framework. <u>Foster</u>, 787 F.3d at 250.[5] "Under this framework, the plaintiff must first establish a prima facie case." <u>Laber</u>, 438 F.3d at 430. "Once a plaintiff makes this prima facie case, he creates a presumption of [retaliation], and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision." <u>Id.</u> "If the defendant satisfies this burden, the presumption disappears[,] and the plaintiff must show that the articulated reason is a pretext for [retaliation]. To do so, the plaintiff must do more than simply show the articulated reason is false; he must also show that the employer [retaliated] against him on the basis of" the proffered protected activity. <u>Id.</u> at 430–31.

IV.

A.

Z-Tech first presents a procedural argument that it claims forecloses this appeal. According to Z-Tech, Buchhagen waived

---

[4] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

[5] Buchhagen argues that Beebe's comment while at Lockheed-Martin "about my age" and that "it would be difficult . . . to get another job," coupled with her later complaints of age discrimination are direct evidence of retaliation. <u>Cf.</u> J.A. 913. We do not find this to be persuasive, as it is taken out of context. Moreover, Beebe had already hired her at age sixty-four and later promoted her at age sixty-seven.

her ability to appeal the district court's grant of summary judgment as to her retaliation claim because she did not appeal the district court's findings of law as to the wrongful discharge claim, which, they argue, apply to the retaliation claim as well. We do not find this argument persuasive.

While perhaps maladroit, Buchhagen's issue statement directly addressed the necessary aspects of a retaliation claim: "Whether the District Court erred by dismissing [Buchhagen's] reprisal claim when she presented abundant evidence of retaliatory motive for her termination; Defendants offered shifting, pretextual reasons for her termination; material issues surrounding her discharge were in dispute; and the Court made credibility resolutions against [Buchhagen]." Opening Br. 1–2. Her issue statement, along with the evidence and argument presented throughout her opening and reply briefs, directly appeals the district court's findings as to each element, which is sufficient to pursue review of this claim. For these reasons, we determine that Buchhagen did not waive her right to appeal.

B.

Turning to the merits, to survive summary judgment Buchhagen must have presented a prima facie case by showing (1) that she engaged in protected activity, (2) that Z-Tech took adverse employment action against her, and (3) that the adverse

10

action was causally connected to her protected activity. See S.B. v. Bd. of Edu. of Harford Cnty., No. 15-1474, 2016 WL 1391787, at *6 (4th Cir. Apr. 8, 2016). The parties do not contest that Buchhagen's termination constituted an adverse employment action against her. At issue here, then, are the first and third elements of Buchhagen's claim.

1.

Buchhagen argues she engaged in protected activity by lodging complaints of age discrimination throughout her tenure with Z-Tech. To be sure, Buchhagen frequently objected to her working environment. But contrary to her position now, her complaints were largely silent about age and were instead directed at what Buchhagen considered to be harassment or other unfair treatment by Beebe. As best we can tell, Buchhagen brought her age and its protective status to Z-Tech's attention only once, in her July 20 e-mail to Human Resources. And when read in context, her cursory statement seems to be an afterthought in a laundry list of other complaints rather than the driving force behind any fear of age discrimination or age-related termination. Although the bar to show protected activity is rather low, see EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005), we are hard pressed to credit this stray reference as carrying the day.

11

Nevertheless, for purposes of efficiently adjudicating this case, we will assume that Buchhagen engaged in protected activity as required by the ADEA. We thus move on to the remaining element in contention.

2.

To reiterate, a plaintiff raising a retaliation claim must show a causal connection between the adverse employment action and the protected activity. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). As this Court has previously explained, the traditional principles of but-for causation apply here, which simply means that the retaliation was the "real reason" for the adverse employment action. Foster, 787 F.3d at 252. Put differently, the employee must show that he would not have suffered an adverse employment action "but for" the protected activity. Id.

Because this case is proceeding under the burden-shifting framework of McDonnell Douglas, Buchhagen "must establish both that [Z-Tech's proffered legitimate business] reason was false and that retaliation was the real reason for the challenged conduct." Foster, 787 F.3d at 252. We conclude she failed to meet this burden.

As noted in the first appeal, "some of Buchhagen's behavior as described in the complaint could be construed as problematic or even insubordinate." Buchhagen, 545 F. App'x. at 220.

12

Discovery proved this statement to be true, and in light of the undisputed evidence of Buchhagen's continued insubordination, no reasonable jury could conclude she was terminated for any reason other than Z-Tech's legitimate business interests. Z-Tech presents a clear and long train of frustration with Buchhagen's noncompliance. Buchhagen's interactions with Beebe after the October 2009 SHI incident demonstrated a troubling pattern of obstinate behavior to the point where Beebe lost trust in Buchhagen's ability to perform her job. As early as March 2010, Z-Tech noticed that Buchhagen repeatedly refused to acknowledge Beebe's authority as her supervisor. In addition, she failed to recognize the common sense business practice of implementing a back-up process, even though NCI specifically requested one. In sum, the record fully documents Buchhagen's contumacious behavior, despite repeated warnings from Beebe and Human Resources.

Further, the record details Z-Tech's growing dissatisfaction with Buchhagen's work ethic prior to any complaints about age. The decision to place her on a PIP, and Beebe's July 20 e-mail warning Buchhagen of the effects of not following the PIP's terms, predate her protected activity. Although Buchhagen colors this July 20 e-mail as a reaction to her complaints of age discrimination and other harassment, the record indicates that the e-mail and its language were drafted

13

well before she engaged in protected activity. As this Court and others have stated, an employment action cannot be adverse when the action was contemplated before the protected activity occurred. See Baqir v. Principi, 434 F.3d 733, 748 (4th Cir. 2006) (recognizing that employee must show that the employer knew of his protected activity to constitute retaliation); see also Leitgen v. Franciscan Skemp Healthcare Inc., 630 F.3d 668, 676 (7th Cir. 2011) ("A claim of retaliation based on suspicious timing depends on what the relevant decision-makers knew and when . . . .").

We further determine that Buchhagen's argument based on the temporal proximity between her termination and her protected activity is insufficient to persuade a reasonable jury that she was fired because of her age. As this Court recently held,

> While the temporal proximity between [an employee's] protective activity and the [adverse employment action] may be sufficient to make an initial prima facie showing of causation, see Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015), timing alone generally cannot defeat summary judgment once an employer has offered a convincing, nonretaliatory explanation. See Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1066 (10th Cir. 2009). Without more than his own assertions, [an employee] cannot meet his burden at summary judgment. See Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 705–06 (4th Cir. 2001) (rejecting plaintiff's retaliation claim at summary judgment because no reasonable jury could find the employer's explanation pretextual).

14

S.B., 2016 WL 1391787, at *7.  The same is true here.

The district court fittingly summarized Buchhagen's claims:

> [t]his case provides an unfortunate example of an employee who, though talented, came to believe she was indispensible because of her experience.  In effect, plaintiff seeks to turn the ADEA on its head by arguing that her age and experience gave her the right to work on her own, unsupervised and without the back-up her employer thought was essential.  The ADEA is intended to prevent discrimination based on age, not to confer increased status upon those who become older.

Buchhagen, 2015 WL 727947, at *2.

V.

For these reasons, we affirm the judgment of the district court.

AFFIRMED

15